Leonard F. PICKLE, Jr. and DELTA PECAN, INC.
*v.* Simon ZUNAMON, et al.

CA 85-326                                               716 S.W.2d 770

Court of Appeals of Arkansas
Division I
Opinion delivered October 1, 1986
[Rehearing denied October 22, 1986.]

*Stanley R. Langley* and *W.H. Drew*, for appellant.

*Daggett, Van Dover, Donovan & Cahoon*, by: *W.H. Daggett*, for appellee.

GEORGE K. CRACRAFT, Chief Judge. Leonard F. Pickle, Jr., and Delta Pecan, Inc., appeal from an order of the chancery court of Phillips County, Arkansas, holding that they are barred by a decree of the chancery court of Coahoma County, Mississippi, and our opinion in a former appeal in this case from asserting their claim of title to lands lying in Arkansas claimed by Simon Zunamon. The sole issue on the first appeal was whether the Phillips County Chancery Court erred in holding that a former decree entered by the chancery court of Coahoma County, Mississippi, was entitled to full faith and credit and constituted a bar to appellants' claim in the Arkansas proceedings. The issue here in whether our decision affirming that determination barred

further assertion of that claim under the rule of the "law of the case." We agree with the chancellor that the action is barred.

A detailed recitation of the facts presented in the record would serve no useful purpose and unduly lengthen this opinion. Only a brief mention of the factual and procedural background is required to bring the narrow issue we decide into focus. At the time Arkansas was admitted into the Union the main channel of the Mississippi River marked the boundary line between the States of Arkansas and Mississippi in the area in which this controversy arose. Arkansas lands, now known and designated on charts as "Island Sixty-Four," lay on the left descending bank opposite Mississippi lands designated as "Jackson Point." Due to the process of erosion and accretion many changes in the channel occurred in subsequent years. Each state lost some territory to erosion and each gained some at the other's expense by accretion. In some places lands once originally surveyed in one state had been completely lost to it by erosion and their geographic situs occupied by accretions to lands of the other states. So long as the river maintained its main channel through the area, these changes marked no change in the state boundary or the boundaries of private owners as these boundaries followed the changing course of the channel. *Arkansas* v. *Tennessee*, 246 U.S. 158 (1918); *Uhlhorn* v. *U.S. Gypsum Co.*, 366 F.2d 211 (8th Cir. 1966).

In 1941 the U. S. Corp of Engineers effected a cut-off across the neck of Jackson Point causing the river to abandon its old channel and adopt a new one. The abandoned channel between "Jackson Point" and "Island Sixty-Four" subsequently stagnated and ceased to flow. The boundary line between the States of Arkansas and Mississippi and of private ownership in each state then became fixed in the thalweg of the old channel, no longer subject to changes by erosion and accretion. *Arkansas* v. *Tennessee, supra*; *Missouri* v. *Nebraska*, 196 U.S. 23 (1904); *Uhlhorn* v. *U.S. Gypsum Co., supra*. Although subject to accurate location, the boundary between Island Sixty-Four and Jackson Point has never been established by an original action or compact between the two states and has been shown on all subsequent maps and charts of the Mississippi River Commission as "indefinite." In any litigation involving lands in this area the location of that fixed boundary and hence the territorial jurisdiction of courts

in the sister states was, and is, a question of fact.

Zunamon claims title to lands on both Island Sixty-Four and Jackson Point, deraigning his title to the former from the State of Arkansas and the latter from the State of Mississippi. In 1982 Zunamon brought an action in the chancery court of Coahoma County, Mississippi, to quiet his title to lands lying on Jackson Point as against the claims and purported interests of named defendants who were asserting title to that land under tax deeds executed by the Arkansas Commissioner of State Lands. The appellees contended that the area described in the Arkansas tax deeds had been lost to the State of Arkansas by erosion prior to the 1941 avulsion and that the geographic situs once occupied by those lands was now occupied by accretions to Mississippi lands on Jackson Point. By subsequent amendment, the appellants, Pickle and Delta Pecan, Inc., were made parties to that suit and served under process authorized by the State of Mississippi. The appellants did not answer and a decree, which recited that the claim of the appellee Zunamon was superior to any claims of the defendants to all lands described in his complaint, was entered against them by default. No appeal was taken from that decree.

Shortly thereafter Zunamon brought this action against appellants in the chancery court of Phillips County alleging that they were conducting activities on his lands on Island Sixty-Four which interfered with his use and quiet enjoyment, and prayed that they be enjoined from conducting those activities and that his title be quieted against them. The appellants answered, asserting their tax deed from the State of Arkansas, and counterclaimed for the quieting of that title against the claims and purported interests of Zunamon. Zunamon moved to strike the counterclaim, asserting that the geographic situs of the lands described in appellants' tax deed had been held by the Mississippi court to be now occupied by lands within the territorial jurisdiction of Mississippi and the Arkansas deed could not now be asserted as the basis of a claim adverse to Zunamon's title.

Appellants answered contending that they had never been served with summons in the Mississippi action and were not subject to the Mississippi court's jurisdiction. They further asserted that no land described in their counterclaim constituted a part of the State of Mississippi, nor was included in the

description of lands described in the complaint of the plaintiff filed in Coahoma County, and, as it did not lie within the State of Mississippi, the court had lacked subject matter jurisdiction. The chancellor granted the motion to strike the counterclaim, holding that the Mississippi court did have jurisdiction to enter the decree, that it was entitled to full faith and credit in this state, and was *a bar to the action asserted in the counterclaim.*

■■ The court of appeals affirmed the ruling of the chancellor in an unpublished opinion in *Leonard F. Pickle, Jr., et al.* v. *Simon Zunamon,* CA 83-289 (June 13, 1984). In that opinion we upheld the chancellor's finding that the Mississippi law regarding service of process was complied with and that the appellants additionally had actual notice of the action. We also rejected the appellants' contention that the Mississippi decree was subject to collateral attack in the Arkansas court because it purported to affect title to lands which were actually within the territorial jurisdiction of the State of Arkansas. We recognized that a court in one state cannot directly adjudicate or operate upon title to lands located in another, *Tolley* v. *Tolley,* 210 Ark. 144, 194 S.W.2d 687 (1946), but concluded, however, that the Mississippi court was not attempting to directly operate on the title to Arkansas lands. It merely determined the extent of its territorial jurisdiction and purported to operate only on the title to those lands it found to be within the State of Mississippi and thus within its jurisdiction. We also held that the court had the authority to determine the extent of its territorial jurisdiction. *Uhlhorn* v. *U.S. Gypsum Co., supra.* Although we recognize that a determination of a court as to the extent of its jurisdiction is subject to appellate review, it is not subject to collateral attack in subsequent proceedings. *Durfee* v. *Duke,* 375 U.S. 106 (1963). *See also* Leflar, *American Conflicts Law,* § 79 (1977). In *Durfee* it was held that the constitutional command for full faith and credit requires that judicial proceedings be given the same full faith and credit in every court within the United States as they have by law or usage in the courts of such states from which they are taken. It is clear to us that the Mississippi courts would give full *res judicata* effect to the decree of the Coahoma County Chancery Court in quieting the appellees' title. The Mississippi court gives the same effect and legal consequences to a default judgment as it does to a jury verdict. *McGee* v. *Griffin,* 345 So.2d

1027 (Miss. 1977); *Strain* v. *Gayden*, 20 So.2d 697 (Miss. 1945). The courts of Mississippi give that effect not only to those matters which were actually litigated but those which could and therefore should have been litigated in the prior proceedings. *Id.* We concluded that the chancellor's determination that the Mississippi court had jurisdiction over both the parties and the subject matter and entitled to full faith and credit was not clearly erroneous and against the preponderance of the evidence and affirmed his order.

Subsequent to that opinion the appellants amended their complaint, deraigned their title, and offered to prove by expert testimony that the lands described in their deed had never been lost by the State of Arkansas by erosion. They proffered proof that the property which they claimed originated in part as an island which was never eroded away and had always remained intact. They also contended that the Mississippi decree was not broad enough to encompass the lands then in issue. In the order now subject to our review the chancellor held that, since his initial decree had been fully affirmed by the appellate court, evidence tending to show that he had been in error in those determinations on which it had been based could not then be received. We agree.

■ Our court has long adhered to the rule that when a case has been decided by it, and after remand returned to it on a second appeal, nothing is before the court for adjudication except those proceedings had subsequent to its mandate. Matters decided in the first appeal are the law of the case and govern the action of the trial court on remand and our actions on a second appeal to that extent, even if we were now inclined to say that we were wrong in the earlier decision. This rule is based on the fundamental concept that judgments must at some point become final and departure from that rule would result in only uncertainty, confusion, and incalculable mischief. *International Harvester Co.* v. *Burks Motors, Inc.*, 252 Ark. 816, 481 S.W.2d 351 (1972); *Ouachita Hospital* v. *Marshall*, 2 Ark. App. 273, 621 S.W.2d 7 (1981).

On the first appeal we affirmed the chancellor's findings and conclusions that the Mississippi decree was entitled to full faith and credit and was a bar to the claims of the appellants in the Phillips County action. Our mandate neither directed nor authorized further proceedings. It "in all things" affirmed the decree

appealed from. That opinion and our mandate became the law of the case and the issues of whether the Mississippi court had territorial jurisdiction to enter the decree and whether the decree actually encompassed the lands in question or otherwise did not bar the counterclaim, were foreclosed.

Affirmed.

COOPER and GLAZE, JJ., agree.