238

Tony Lee BENAC *v.* STATE of Arkansas and State of
Arkansas Ex Rel Jeanene Cottrill

CA 90-243                                   808 S.W.2d 797

Court of Appeals of Arkansas
En Banc
Opinion delivered May 22, 1991
[Rehearing denied June 19, 1991.*]

*Willard Crane Smith, Jr.*, for appellant.

*G. Keith Griffith*, for appellee.

JAMES R. COOPER, Judge. The appellant in this civil case was
married to the appellee, Jeanene Cottrill, in September 1977. On
June 29, 1979, the appellee gave birth to Nathan Benac. The
appellant was divorced from the appellee by a North Carolina
divorce judgment dated July 30, 1982. On August 2, 1989, the
State of Arkansas, through its child support enforcement unit,
filed a complaint in the Chancery Court of Crawford County,
Arkansas, seeking an order requiring the appellant to pay child

---

*Mayfield, J., would grant rehearing.

support on behalf of Nathan Benac. (Ms. Cottrill had assigned her rights to support to the State of Arkansas pursuant to Ark. Code Ann. § 20-76-410 (1987)). In his answer, the appellant denied being the father of the child. Subsequently, he obtained counsel and filed a third-party complaint against Ms. Cottrill and he requested blood testing to determine paternity pursuant to Ark. Code Ann. § 9-10-108 (Repl. 1991). After a hearing, the chancellor found that Nathan's paternity had been determined by the North Carolina court and that the issue was *res judicata*, ordered the appellant to pay child support, and denied his motion for blood testing. From that decision, comes this appeal.

For reversal, the appellant contends that the chancellor erred in denying his motion for paternity blood testing. We do not agree, because we conclude that the chancellor properly determined that the issue of paternity had been decided in the North Carolina divorce action and was barred by the doctrine of *res judicata*.

The North Carolina judgment incorporated a finding that "[t]here was one child born of the marriage, namely, Nathan Aaron Benac, born the 29th day of June, 1979. . . ." It has been generally held that, in the event of subsequent proceedings between a husband and wife, they are concluded by a finding or implication of paternity in a prior divorce or annulment decree. Annotation, *Paternity Findings as Res Judicata*, 78 A.L.R. 3d 846, 851 (1977).

The facts of *Withrow* v. *Webb*, 53 N.C. App. 67, 280 S.E.2d 22 (1981), are similar to those presented in the case at bar. After entry of a divorce judgment incorporating a finding of paternity couched in language practically identical to that employed in the case at bar, the husband filed a motion seeking to require his ex-wife and child to submit to blood-group testing. The motion was denied, and the husband appealed. The North Carolina Court of Appeals affirmed the trial court's ruling, holding that the issue of paternity was barred by *res judicata* by virtue of the finding in the divorce judgment, and that, because the issue of paternity was therefore not before the trial court, the statutorily-imposed obligation to order the parties to submit to blood-grouping tests never arose. *Withrow, supra*, 280 S.W.2d at 24.

We think it clear that the North Carolina courts

would give *res judicata* effect to the finding of paternity in the divorce judgment in the case at bar, and we are required to do likewise under the constitutional command of full faith and credit. *Pickle* v. *Zunamon*, 19 Ark. App. 40, 716 S.W.2d 770 (1986). We hold that the issue of paternity was barred by *res judicata*, and that the chancellor did not err in denying the appellant's motion for blood testing.

Affirmed.

MAYFIELD, J., dissents.

MELVIN MAYFIELD, Judge, dissenting. I cannot agree with the majority opinion in this case. Actually, I think the majority fails to fully recognize the issue presented.

First, it is important to note who filed this lawsuit. It was commenced by the State of Arkansas through the Child Support Enforcement Unit of the Department of Human Services. The complaint alleges the State has paid $2,204.00 for the support of the appellant's child, for which the State wants a judgment, and that the appellant should be directed to pay into the registry of the court a reasonable sum for the future support of the child. It is also alleged that the mother of the child has assigned her rights for child support to the State.

Second, it is important to note what rights the mother of the child has assigned to the State. The complaint alleges that the appellant and the mother of the child were divorced by the State of North Carolina but that all three of them now live in Arkansas. The complaint, however, does not allege that the North Carolina decree provided for the appellant to pay the mother child support in any amount. Indeed, during the trial of this matter, the State introduced into evidence a North Carolina judgment which granted the appellant "an absolute divorce" from his wife, and which recites "there was one child born of the marriage" and that the child is presently in the custody of its mother, but the decree makes no provision for the appellant to pay child support in any amount.

Third, it is important to note that the appellant, who was the defendant in the trial court in the present case, filed a pro se answer to the complaint filed by the State. In his answer the appellant alleged that he was not the father of the child and,

although married to the mother, that he was in fact in military service and on a ship in the North Atlantic at the time the child was conceived. Moreover, the answer alleged that the child, its mother, and the appellant have such blood types that it is not possible that the appellant could be the father of the child. Subsequently, the appellant obtained counsel who filed a third party complaint making the mother of the child a party and restating the allegations in his pro se answer. In addition, the third party complaint asked that the trial court order blood tests for the child, its mother, and the appellant.

At trial, the appellant testified in keeping with the allegations in his answer and also said that at the time of the divorce in North Carolina he did not have a lawyer but he was told that the paternity of the child could be raised later. The appellant also testified that no child support was ordered because appellant denied he was the child's father, and appellant pointed out that the divorce decree stated that "one child was born of the marriage," but did not state that appellant was the father of the child, did not award custody of the child to either party, and did not provide for the payment of child support in any amount.

Fourth, it is important to note the rulings made by the Arkansas Chancery Court in this case. At the conclusion of the testimony, the court ruled that custody of the child would remain with the mother; that the appellant would pay $250.00 per month child support thru the registry of the court; and that appellant would provide health insurance for the child. The judge also stated he wanted counsel to brief the law of North Carolina on the matters presented, and the issue of whether blood tests should be ordered was continued and briefs were requested on that issue. Subsequently, the court entered an order holding that the "paternity of the minor child" had been "determined appropriately by the court in the State of North Carolina, and that issue is res judicata." The appellant's request for blood testing was denied, and the orders made at the conclusion of the first hearing were "hereby confirmed and remain in full force and effect."

Fifth, it is important to note the issue raised by the appellant in this appeal. He argues that the issue of paternity has never been litigated or concluded, and "The chancellor erred by not granting the appellant's request for paternity blood testing." Appellant's

brief relies upon Ark. Code Ann. § 9-10-108 (Repl. 1991) to support his request for blood testing. That section provides: "At the request of either party in a paternity action, the trial court shall direct that the defendant, complainant, and child submit to . . . blood tests . . . to determine whether or not the defendant can be excluded as being the father of the child and to establish the probability of paternity if the test does not exclude the defendant." The section is part of Act 725 of 1989, which the Arkansas Supreme Court has held was in effect at least on September 7, 1989. *See White* v. *Winston*, 302 Ark. 345, 347, 789 S.W.2d 459 (1990). Thus, the section was in effect on November 7, 1989, when the present case was heard. Ark. Code Ann. § 9-10-101(a)(2) (Repl. 1991) is also part of Act 725 of 1989, and provides that "the chancery court shall have exclusive jurisdiction of paternity matters which arise during pendency of original proceedings brought under equity jurisdiction."

It should also be noted that this case does not involve an attempt to register the North Carolina decree in Arkansas as a foreign judgment, and without registration the trial court in Arkansas did not have the authority to treat the North Carolina decree as an Arkansas decree. *See Nehring* v. *Taylor*, 266 Ark. 253, 583 S.W.2d 56 (1979), and *McGill* v. *Robbins*, 231 Ark. 411, 329 S.W.2d 540 (1959). Moreover, the appellees are not seeking to enforce a provision in the North Carolina decree for payment of child support as no such provision was made in the North Carolina decree. So at best, the appellees are simply trying to obtain an order for child support based upon their contention that the North Carolina decree decided that appellant is the father of the child involved and that the North Carolina decision is res judicata in Arkansas.

This is an issue discussed in H. Clark, *The Law of Domestic Relations in the United States* § 15.1 (1968). The author discusses the importance of res judicata in child support cases and points out that if the putative father is required to pay child support "a far-reaching and burdensome obligation is imposed" and therefore "more serious consequences follow from a determination of paternity than from the usual judgment in an action for damages." *Id.* at 493. The author then states:

Today non-paternity may in some cases be medically

established, so that a rigorous application of res judicata may require a man to support a child demonstrably not his own. It would seem that where he can produce evidence of this probative force the husband should be allowed to relitigate paternity.

*Id.* However, the author points out that the doctrines of res judicata and collateral estoppel have in most situations allowed little relief from any hardship produced by their application. Of the situation most nearly involved in the present case, it is stated:

The intermediate case is where the divorce decree contains a finding of paternity made without contest by the husband, but does not contain an order for support. There is authority that such a prior finding forecloses an attempt by the husband to disprove paternity, but it would seem preferable to give the husband his day in court on this issue. One case has held that a finding of non-paternity does not prevent the wife from later asking for a child support order. If this is correct, the husband should have the same opportunity in the converse situation.

*Id.* at 494 (footnoted citations omitted).

It seems to me that the above observations have a great deal of merit and are especially applicable to the case at bar. Here, the appellant testified that he did not have physical access to his wife during the period in which the child was conceived. Furthermore, appellant testified as to his understanding of the blood groupings involved, and the child's mother agreed that appellant's testimony was correct with regard to the types of blood that she, her child, and the appellant had. While the court did not admit it into evidence, appellant proffered a book which stated that, with the blood types to which appellant testified, it would not be possible for appellant to be the father of the child. The above testimony coupled with appellant's testimony that the issue of paternity was not really adjudicated, the fact that the divorce decree did not plainly state that appellant was the father of the child "born of the marriage," and the fact that the decree did not order appellant to pay child support indicates that it might have been proper for the chancellor to have granted appellant's request for blood tests.

In *White* v. *Winston, supra,* the Arkansas Supreme Court

held there was no irrebuttable presumption or public policy which precluded a determination of the paternity of a child conceived but not born during the marriage. The issue in the present case is simply the next step from that holding, and since that holding, the Arkansas General Assembly has passed Act 657 of 1989 which declares that the biological mother of a child and the husband of the biological mother shall each be a competent witness, to testify as to the dates of their marriage, their separation, their period of cohabitation, period of nonaccess and lack of sexual contact, in any court proceeding or administrative hearing where paternity or child support is an issue; the Act also provides that the trial court may order blood tests of the mother, her husband, and her child. *See* Ark. Code Ann. § 16-43-901 (Supp. 1989). This Act was in effect at the time this case was tried, and clearly does away with previous restrictions on this type testimony. The admissibility of this type testimony plus the advances in blood-grouping tests will surely promote fact over fiction in paternity cases.

The majority opinion, however, relies upon the Annotation, *Paternity Findings as Res Judicata*, 78 A.L.R.3d 846 (1977), for the proposition that in subsequent proceedings between husband and wife the finding or implication concerning paternity made in a prior divorce or annulment suit between them will generally be conclusive under the doctrine of res judicata. But that Annotation also makes the following statement:

> However, in cases where it was clear, or where it appeared, that the issue of paternity had not been finally adjudicated in the earlier divorce action, the courts have declared that a finding or implication of paternity resulting from the action is not binding on a husband and wife in a subsequent proceeding between them . . . .

*Id.* at 851. A case which illustrates the principle set out in the above quote is *Garrett* v. *Garrett*, 54 Ohio App. 2d 25, 374 N.E.2d 654 (1977), where the wife claimed a divorce decree was res judicata as to the paternity issue presented by a motion for modification of the divorce decree. The appellate court did not agree for two reasons. One, while the husband raised the issue in general terms and the judge insisted on a finding that the child was the "issue of the marriage" for the child's protection, the husband's counsel clearly and openly reserved the option to raise

the paternity issue again when the child was six months old. The appellate court said, "In short, while the decree was final on its face, the paternity issue was clearly reserved on the record." And the second reason that res judicata did not apply was because Ohio's Civil Rule 60(B) provided a means where, within strict limitations and under certain conditions, the consequences of res judicata could be avoided in the interest of justice.

Another case which agrees with the view by Clark, *The Law of Domestic Relations, supra,* and the principle above quoted from the Annotation at 78 A.L.R.3d 846, *supra,* is *In re Evans,* 267 N.W.2d 48 (Iowa 1978), where in 1976 a trial judge modified a decree to reflect that a child referred to in the petition for divorce granted in 1972 was not the child of the man from whom the child's mother was divorced. In affirming this action of the trial judge, the Supreme Court of Iowa said of the modification proceeding "paternity could properly be litigated there since it was not expressly determined in the original dissolution action." 267 N.W.2d at 50. And the court cited both Clark and the Annotation, along with prior Iowa cases, as authority.

Therefore, there is authority for the issue of appellant's paternity, which was in fact not litigated in the North Carolina divorce suit, to be litigated in the present case. The trial court here simply held that the issue was foreclosed by res judicata and refused to order blood test and litigate the paternity issue. The Restatement (Second) of Judgments § 17(3) (1980) states:

> A judgment in favor of either the plaintiff or the defendant is conclusive, in a subsequent action between them on the same or a different claim, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

As the divorce decree in North Carolina did not make an award of child custody or child support, the determination of appellant's paternity was not essential to that decree, and it should not be res judicata as to the paternity issue in the present case. The North Carolina case of *Withrow* v. *Webb,* 53 N.C.App. 67, 280 S.E.2d 22 (1981), cited in the majority opinion, has no application under the facts and circumstances shown by the record in the case at bar. In *Withrow* the wife filed for divorce alleging there was one child born of the marriage. The husband admitted this allegation

and asked for custody of the child. The court's order gave the wife custody but provided for visitation by the husband and directed the husband to pay $35.00 per week for support of the child. Under these facts and circumstances, it was held that the husband's motion stating the child was not his and asking for blood tests should be denied on the basis of res judicata. Those facts and circumstances are obviously different from those in the case at bar.

Moreover, res judicata should not apply in this case because Restatement (Second) of Conflict of Laws § 115 (1969) provides:

> A judgment will not be recognized or enforced in other states if upon the facts shown to the court equitable relief could be obtained against the judgment in the state of rendition.

Under Rule 60(b) of North Carolina's Rules of Civil Procedure, equitable relief could be obtained against the divorce decree sued upon in the present action. That rule, like Rule 60(b) of the Federal Rules of Civil Procedure, provides for relief from a final judgment for certain reasons. In *Poston* v. *Morgan*, 83 N.C.App. 295, 350 S.E.2d 108 (1986), the court reversed a trial court's denial of a motion to modify a judgment which foreclosed claims made by the appellants in several pending cases. The appellate court said the appellants

> rely on a portion of Rule 60(b)(5) which provides that a party may be relieved of a judgment if "it is no longer equitable that the judgment have prospective application," and on Rule 60(b)(6) which allows relief for "any other reason justifying relief from the operation of the judgment."

350 S.E.2d at 110. The court held that "[b]ecause of procedural blunders made by some of the attorneys representing plaintiffs, plaintiffs have never had a full hearing on the merits of any of their claims." *Id*. at 111. I think this case is clear authority for allowing the appellant in the case at bar to have "a full hearing" on the merits of his claim that he is not the father of the child in this case. I also note that North Carolina's Rule 60(b)(5) and (6) does not subject the motion to modify, or the bringing of an independent action for that purpose, to the requirement that the

motion or action must be made within a certain period of time, not even "within a reasonable time."

For the reasons stated above, I would reverse the trial judge's decision and remand this matter for blood tests to be ordered and a determination of paternity to be made based upon all the evidence presented.