State of Arkansas OFFICE of CHILD SUPPORT ENFORCEMENT *v.* Thornell WILLIAMS

98-1240                                        995 S.W.2d 338

Supreme Court of Arkansas
Opinion delivered July 8, 1999

*Donna D. Galloway*, for appellant.

No response.

ROBERT L. BROWN, Justice. This is a one-brief appeal in which the appellant, State of Arkansas Office of Child Support Enforcement (hereinafter "OCSE"), appeals an order abating future child support for appellee Thornell Williams on two grounds: (1) the issue of his paternity was decided in the divorce decree and *res judicata* applies; and (2) abatement of future child support is not in the best interests of the children. We agree that *res judicata* applies, and we reverse and remand.

On July 10, 1979, Brenda F. Williams and the appellee were married. On March 15, 1990, the chancery court entered a decree granting Brenda Williams a divorce and awarding her custody of the three children born during the marriage (Francis Williams, Brandon Williams, and Thornell Williams, Jr.), subject to reasonable visitation by the appellee. The appellee was ordered to pay $80 a week in child support and to pay for all reasonable medical and dental bills incurred on behalf of the children.

On August 1, 1996, Brenda Williams filed a motion to modify the child support obligation based on the appellee's increased income and to recover accrued child-support arrearages of $9,881.66. Because she had assigned her rights to OCSE, OCSE was allowed to intervene. Also, on August 1, 1996, the appellee filed an agreement to pay child support. In this document, he admitted that he was the natural parent of the three children and agreed to a consent judgment on the arrearages. He also agreed to increase child support to $95 a week and to participate in income-withholding for that purpose. The consent judgment was entered on August 2, 1996.

On November 25, 1996, OCSE filed a motion for citation against the appellee for failing to comply with the consent judgment, and the chancery court entered an order for the appellee to show cause why he should not be held in contempt. The appellee filed a counterpetition to modify the child-support order, stating that he had been informed by Brenda Williams and others since entry of the consent judgment that he was not the biological

father of Brandon Williams and Thornell Williams, Jr.[1]  In his
petition, he requested approval for blood tests to establish paternity
of the children and asked the chancery court to abate his child-
support obligation.  OCSE responded, pleading *res judicata* based
on the divorce decree and Ark. Code Ann. § 9-10-115 (Supp.
1995).

The chancery court ordered the paternity tests, abated the
child support until the tests were done, and found the appellee in
contempt of court.  The blood tests subsequently determined that
the appellee was not the father of the two boys.  On July 10, 1998,
the chancery court entered an order permanently abating the
appellee's child-support obligation.  Prior to entry of the order,
the court ruled from the bench that from a purely legal standpoint,
the argument that *res judicata* applied was correct, but that from an
equitable standpoint, he was not going to force the appellee to pay
child support on two children who were not biologically his.

## I.  Res Judicata

For its first point on appeal, OCSE urges that the
divorce decree was *res judicata* on the issue of paternity.  *Res judi-
cata* bars relitigation of a subsequent suit when: (1) the first suit
resulted in a final judgment on the merits; (2) the first suit was
based upon proper jurisdiction; (3) the first suit was fully contested
in good faith; (4) both suits involve the same claim or cause of
action; and (5) both suits involve the same parties or their privies.
*See Miller County v. Opportunities, Inc.*, 334 Ark. 88, 971 S.W.2d
781 (1998); *Hamilton v. Arkansas Pollution Control & Ecology
Comm'n*, 333 Ark. 370, 969 S.W.2d 653 (1998).  *Res judicata* bars
not only the relitigation of claims that were actually litigated in the
first suit but also those that could have been litigated.  *See Wells v.
Arkansas Pub. Serv. Comm'n*, 272 Ark. 481, 616 S.W.2d 718
(1981).  Where a case is based on the same events as the subject
matter of a previous lawsuit, *res judicata* will apply even if the sub-
sequent lawsuit raises new legal issues and seeks additional reme-

---

[1] Brenda Williams testified to conversations with the appellee "when the kids were
younger" about the two boys not being his, which suggests the appellee knew the two boys
were not his before the consent judgment.

dies. *See Swofford v. Stafford*, 295 Ark. 433, 748 S.W.2d 660 (1988).

■ In the past, we have applied the doctrine of *res judicata* to the issue of paternity when paternity was established under a divorce decree. *See McCormac v. McCormac*, 304 Ark. 89, 799 S.W.2d 806 (1990). In *McCormac*, a mother sought to relitigate the paternity issue following a divorce decree. The request was included in her response to her ex-husband's motion to hold her in contempt for failing to comply with visitation. In the original divorce decree, the chancery court had found that it had subject-matter jurisdiction and had awarded custody, set child support, and fixed visitation. On appeal, we held that the mother's paternity claim was barred by *res judicata* because the mother pled in the divorce action that the child was born of the marriage, and the father admitted this fact. Our court of appeals has held similarly in several cases. *See, e.g., Golden v. Golden*, 57 Ark. App. 143, 942 S.W.2d 282 (1997); *Scallion v. Whiteaker*, 44 Ark. App. 124, 868 S.W.2d 89 (1993); *Department of Human Servs. v. Seamster*, 36 Ark. App. 202, 820 S.W.2d 298 (1991); *Benac v. State*, 34 Ark. App. 238, 808 S.W.2d 797 (1991).

The weight of authority in other jurisdictions is in accord with this view of the *res judicata* effect of divorce decrees on the paternity issue. *See, e.g., In re Paternity of Rogers*, 697 N.E.2d 1193 (Ill. App. Ct. 1998); *Love v. Love*, 959 P.2d 523 (Nev. 1998); *Godin v. Godin*, 725 A.2d 904 (Vt. 1998); *Gann v. Gann*, 705 So.2d 509 (Ala. Civ. App. 1997); *Grice v. Detwiler*, 488 S.E.2d 755 (Ga. Ct. App. 1997); *Beyer v. Metze*, 482 S.E.2d 789 (S.C. Ct. App. 1997); *In re A.L.J., a/k/a A.L.E.*, 929 S.W.2d 467 (Tex. Ct. App. 1996); *see also* Donald M. Zupanec, Annotation, *Effect, In Subsequent Proceedings, Of Paternity Findings Or Implications In Divorce Or Annulment Decree Or In Support Or Custody Order Made Incidental Thereto*, 78 A.L.R.3d 846.

■ The Vermont Supreme Court set out succinctly the policy considerations which favor this principle:

> Although we understand plaintiff's interest in ascertaining the true genetic makeup of the child, we agree with the many juris-dictions holding that the financial and emotional welfare of the

> child, and the preservation of an established parent–child relationship, must remain paramount. . . . Whatever the interests of the presumed father in ascertaining the genetic "truth" of a child's origins, they remain subsidiary to the interests of the state, the family, and the child in maintaining the continuity, financial support, and psychological security of an established parent–child relationship. Therefore, absent a clear and convincing showing that it would serve the best interests of the child, a prior adjudication of paternity is conclusive.

*Godin*, 725 A.2d at 910 (citations omitted). The Vermont Supreme Court further noted that its holding would deter parents who might seek to dissolve their parental bonds for financial or for other self-serving reasons. *See Hackley v. Hackley*, 395 N.W.2d 906, 913–14 (Mich. 1986) (best interests of child in maintaining stability and preventing psychological trauma must prevail over unfairness to father; contrary decision would result in chaos and humiliation); *In re Paternity of JRW & KB*, 814 P.2d 1256,1265 (Wyo. 1991) ("Because of the potentially damaging effect that relitigation of a paternity determination might have on innocent children, the doctrines of res judicata and collateral estoppel are rigorously observed in the paternity context.").

■ In the case before us, the divorce decree stated that the children were born of the marriage, and the chancery court awarded custody, ordered child support, and set visitation. The issue of paternity, accordingly, was decided. *See McCormac v. McCormac, supra; Anderson v. Anderson*, 552 N.E.2d 546 (Mass. 1990) (a divorce decree is an adjudication of the paternity of a child of the marriage); *Godin v. Godin, supra* (paternity necessarily determined in original divorce proceeding, which awarded child support). Moreover, the appellee had the opportunity to raise and litigate the paternity issue, but he failed to do so. In this regard, there was some evidence, based on Brenda Williams's testimony, that he knew that the two boys were not biologically his much earlier. He also signed an agreed order in 1996, admitting that he was the father of the children. Under these circumstances, we hold that the principle of *res judicata* applies and that the chancery court erred in failing to do so.

## II. Paternity Code

Although it is not briefed by OCSE and seemingly was not relied on by the chancery court, we feel constrained to address Ark. Code Ann. § 9-10-115(d) (Supp. 1995), which addresses modification of a child-support order when it is determined in a paternity suit that a man is not the biological father of a child.[2] *See, e.g., Littles v. Flemings*, 333 Ark. 476, 970 S.W.2d 259 (1998). In *Littles*, this court relied on § 9-10-115(d) and held that a man who had been adjudicated the father of a child in a paternity suit was entitled to relief from future child-support obligations, after scientific testing proved that he was not the child's biological father. We said: "[T]he statute *mandates* that an adjudicated father in Mr. Littles's position receive prospective relief from a child-support judgment." *Littles*, 333 Ark. at 481, 970 S.W.2d at 262.

■ Section 9-10-115, however, is part of the Paternity Code and was intended to apply only to judicial findings of paternity or to acknowledgments of paternity by both parents under Ark. Code Ann. § 9-10-120 (Supp. 1995). There is nothing in § 9-10-115 to even suggest that its applicability extended to divorce decrees. Furthermore, we view an adjudication of paternity in a paternity suit, as well as an acknowledgment of paternity by both parents under the Paternity Code as being vastly different from an adjudication of paternity in a divorce decree. In the latter situation, there has been a marriage and in most situations, the children have known the husbands as their fathers. A parental relationship has, thus, been established with the child or children. In a paternity suit, the parent-child relationship has not been forged, and the stability of the family unit is not an issue. This distinction lies at the heart of the disparate treatment accorded scientific testing after a finding of paternity under the Paternity Code and scientific testing which occurs after a divorce decree under our caselaw.

■ Accordingly, because paternity was adjudicated in a divorce decree in the instant case, we hold that *McCormac v.*

---

[2] This code section was amended by Act 1296 of 1997.

*McCormac, supra,* controls and *res judicata* bars the appellee from reopening the paternity issue following the divorce decree.

Reversed and remanded.