COOPER CLINIC, P.A. d/b/a PRO-MED WALK-IN-CLINIC *v.*
Linda BARNES, as Personal Representative of the Estate of
Trenton McMillan, a Minor

05-1166                                                    237 S.W.3d 87

Supreme Court of Arkansas
Opinion delivered June 15, 2006

[Rehearing denied September 7, 2006.*]

---

* GLAZE, J., would grant rehearing.

*Ledbetter, Cogbill, Arnold & Harrison, LLP*, by: *J. Michael Cogbill* and *Rebecca D. Hattabaugh*, for appellant.

*Milligan Law Offices*, by *Phillip J. Milligan*, and *Robinson Wooten, PLC*, by: *Jon P. Robinson*, for appellee/cross-appellant.

ANNABELLE CLINTON IMBER, Justice. On June 8, 2000, Trenton McMillan, a three-year-old boy, was brought by his father, Ralph Lord, to Appellant Cooper Clinic, P.A. d/b/a

Pro-Med Walk-in-Clinic, for treatment of a bump on his head. Lord claimed that another child had accidentally hit Trenton in the head with a golf club. Susan S. Staudt, D.O., a doctor of osteopathic medicine and an employee of Cooper Clinic, examined Trenton, noting that in addition to the large bump on the boy's forehead, his body was covered in bruises and his teeth were chipped and decaying. Dr. Staudt assessed Trenton as being a battered child.

Under the Child Maltreatment Act of 1991, Ark. Code Ann. § 12-12-501 *et seq.*, a physician that has reasonable cause to suspect that a child has been subjected to maltreatment is required to immediately report the abuse to the Arkansas child abuse hotline. *See* Ark. Code Ann. § 12-12-507 (Supp. 2005). A mandatory reporter under the act is subject to civil and criminal penalties for failure to report suspected abuse. Ark. Code Ann. § 12-12-504 (Repl. 2003). While Dr. Staudt was aware of the mandatory reporting requirement, she did not report the suspected abuse of Trenton to the child abuse hotline. Instead, Dr. Staudt relied on the father's assertions that Trenton's mother, Kim McMillan, who lived in Oklahoma at the time, had abused Trenton and that he would promptly report the abuse to the police. Lord subsequently brought Trenton back into the clinic to undergo a blood glucose test because he had been experiencing stomach pains, nausea, vomiting, and mood swings. Dr. Staudt was the attending physician when Trenton was brought in the second time, but she did not ask Lord if he had reported the abuse and, once again, she did not report the abuse herself.

On April 1, 2001, or approximately ten months after his visit to Cooper Clinic, Trenton died from blunt force trauma to his abdomen. Trenton's father and step-mother, Ralph and Marilu Lord, were convicted of the negligent homicide of Trenton. Subsequently, on March 29, 2002, Appellee Linda Barnes, as personal representative for the estate of Trenton McMillan, deceased, filed a wrongful-death action in Crawford County Circuit Court against Ralph and Marilu Lord, Susan S. Staudt, D.O., and Cooper Clinic.

The complaint alleged that Cooper Clinic was liable for damages to the estate because (1) Cooper Clinic failed to report the suspected child abuse under Ark. Code Ann. § 12-12-504, (2) Cooper Clinic was liable under the theory of *respondeat superior* for Dr. Staudt's failure to report the abuse, (3) Cooper Clinic was liable for the medical negligence of Dr. Staudt, and (4) Cooper

Clinic was liable for its own negligent supervision of Dr. Staudt and the attending nurse, Carol Johnson. The medical-negligence claims were eventually dismissed without prejudice.

Prior to trial, Dr. Staudt filed a motion to dismiss, based on the appellee's failure to complete service of process on Dr. Staudt within 120 days of filing the complaint as required under Ark. R. Civ. P. 4(i) (2006). Apparently, the appellee had made two separate attempts to serve Dr. Staudt via certified mail, but service on the doctor had never been successfully completed. The circuit court granted the doctor's motion to dismiss, dismissing the claims against her without prejudice. The appellee subsequently filed a separate suit against Dr. Staudt that is currently pending.

During the trial, Cooper Clinic motioned for a directed verdict at the conclusion of the plaintiff's case, claiming that because the clinic did not qualify as a mandatory reporter under the Child Maltreatment Act, it could not be held directly or vicariously liable for a statutory violation of section 12-12-507, that the clinic was not vicariously liable for the actions of Dr. Staudt because the statute of limitations on the estate's claim had lapsed before the action was filed against Dr. Staudt, and that the clinic's acts did not proximately cause Trenton's death. The circuit court rejected these claims and ultimately denied the clinic's directed-verdict motion.

The appellee also motioned for a directed verdict based on the theory that Cooper Clinic had violated Ark. Code Ann. § 12-12-507. Under this point, the appellee contended the undisputed evidence that Dr. Staudt assessed Trenton as a battered child and did not report the suspected abuse was sufficient to satisfy the requirements for holding a person liable under the mandatory reporting provision of Ark. Code Ann. § 12-12-504. The circuit court denied the appellee's motion, and the case was submitted to the jury.

The jury was asked to answer special interrogatories, and it found in favor of the appellee, affirmatively concluding that Cooper Clinic and its employees were liable for failure to report the child abuse that proximately caused Trenton's death. The clinic was acquitted on the negligent-supervision claim. The jury awarded the estate $500,000 in compensatory damages against Cooper Clinic and Ralph and Marilu Lord and awarded an additional $2,000,000 in punitive damages against the Lords. Cooper Clinic appeals from the jury's verdict.

### I. Cooper Clinic as a Mandatory Reporter Under the
### Child Maltreatment Act

On appeal Cooper Clinic submits that the circuit court erred in denying its motion for directed verdict because it is not a mandatory reporter under Ark. Code Ann. § 12-12-507 (Supp. 2005), and thus, as a matter of law, the clinic cannot be held liable, either directly or vicariously, for failure to report suspected child abuse. In support of this argument, Cooper Clinic states that it is not one of the individuals specifically listed under section 12-12-507. Furthermore, the clinic points out that the statute does not specifically list a professional association, such as Cooper Clinic, as a mandatory reporter. The appellee counters with the argument that Ark. Code Ann. § 12-12-504(b), the section that levies civil liability on mandatory reporters who fail to report child abuse, provides that "[a]ny person, official, or *institution* required . . . to make notification of suspected child abuse who willfully fails to do so" shall be held civilly liable for damages proximately caused by the omission. Ark. Code Ann. § 12-12-504(b) (Repl. 2003). According to the appelleee, the inclusion of the term "institution" in the penalty portion of the Child Maltreatment Act clearly encompasses the institutions that employ the mandated reporters specified in section 12-12-507.

This court reviews issues of statutory construction under a *de novo* standard. *Turnbough v. Mammoth Spring Sch. Dist. No. 2*, 349 Ark. 341, 346, 78 S.W.3d 89, 92 (2002). Because it is for this court to decide the meaning of a statute, we are not bound by the trial court's determination of the statute's meaning. *Id.* The basic rule of statutory construction is to give effect to the intent of the General Assembly. *Id.* The first rule in determining the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* This court will construe a statute so that no word is left void, superfluous or insignificant, with meaning and effect given to every word in the statute if possible. *Id.* When the language of the statute is plain and unambiguous, conveying a clear and definite meaning, we need not resort to the rules of statutory construction. *Id.* A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Farrell v. Farrell*, 365 Ark. 465, 231 S.W.3d 619 (2006).

Additionally, it is a longstanding rule that this court construes statutes that are penal in nature, and more specifically

statutes imposing burdens and liabilities that do not exist at common law, in favor of the party sought to be penalized. *Cooper Realty Invs. Inc. v. Ark. Contractors Licensing Bd.*, 355 Ark. 156, 162, 134 S.W.3d 1, 4 (2003) (quoting *Thompson v. Chadwick*, 221 Ark. 720, 723, 255 S.W.2d 687, 689 (1953)).

We now apply these principles to the statute in question, Ark. Code Ann. § 12-12-504(b), which provides:

> Any person, official, or *institution* required by this subchapter to make notification of suspected child maltreatment who willfully fails to do so shall be civilly liable for damages proximately caused by that failure.

Ark. Code Ann. § 12-12-504(b) (Repl. 2003) (emphasis added).

The persons required to make notification of suspected child abuse are listed in Ark. Code Ann. § 12-12-507(b):

> When any of the following has reasonable cause to suspect that a child has been subjected to child maltreatment . . . he or she shall immediately notify the child abuse hotline:
>
> (1) Any child care worker or foster care worker;
>
> (2) A coroner;
>
> (3) A day care center worker;
>
> (4) A dentist;
>
> (5) A dental hygienist;
>
> (6) A domestic abuse advocate;
>
> (7) A domestic violence shelter employee;
>
> (8) A domestic violence shelter volunteer;
>
> (9) An employee of the Department of Health and Human Services;
>
> (10) An employee working under contract for the Division Youth Services of the Department of Human Services;

(11) Any foster parent;

(12) A judge;

(13) A law enforcement official;

(14) A licensed nurse;

(15) Any medical personnel who may be engaged in the admission, examination, care, or treatment of persons;

(16) A mental health professional;

(17) An osteopath;

(18) A peace officer;

(19) A physician;

(20) A prosecuting attorney;

(21) A resident intern;

(22) A school counselor;

(23) A school official;

(24) A social worker;

(25) A surgeon;

(26) A teacher;

(27) A court-appointed special advocate program staff member or volunteer;

(28) A juvenile intake or probation officer; or

(29) Any clergyman . . . .

Ark. Code Ann. § 12-12-507(b) (Supp. 2005).

Upon examining these provisions, we cannot say that the General Assembly clearly intended the word "institution" in section 12-12-504 to apply to organizations such as Cooper Clinic.

The Child Maltreatment Act itself contains no definition of the term "institution." While section 12-12-507 lists the mandatory reporters, it never specifically designates a medical clinic, such as Cooper Clinic, as a mandatory reporter; rather, it is individuals, such as clergymen, social workers, and medical personnel, who are listed as mandatory reporters. Section 12-12-507, however, does refer to individuals in their capacity as employees of certain state and private groups, such as employees of DHHS and employees of day care centers and domestic violence shelters. Such state and private groups might be regarded as "institutions." This use would be harmonious with the dictionary definition of institution, "[a]n established organization or foundation, especially one dedicated to education, public service, or culture . . . [a] place for the care of persons who are destitute, disabled, or mentally ill." *The American Heritage Dictionary* 908 (4th ed. 2000).

What the General Assembly may have intended when it included the term "institution" in section 12-12-504 is far from clear. Did the General Assembly intend for the organizations that employ individuals listed under section 12-12-507 to be liable as "institutions" under section 12-12-504, or did it intend for just those groups specifically listed in section 12-12-507 as employers of mandated reporters to be liable, or did it intend to designate some other type of "institution"? Because Ark. Code Ann. § 12-12-504 is open to two or more interpretations and because reasonable minds could disagree as to its meaning, we cannot say that it is "clear and unambiguous" on its face.

When a penal statute, such as Ark. Code Ann. § 12-12-504, is ambiguous, our longstanding jurisprudence mandates that any ambiguities be construed in favor of the party sought to be penalized. *Cooper Realty Investments Inc. v. Ark. Contractors Licensing Bd., supra.* Section 12-12-504 subjects mandatory reporters to both criminal and civil liability for failure to make a required notification; thus, it is penal in nature. This court must, therefore, construe Ark. Code Ann. § 12-12-504 in favor of Cooper Clinic and hold that Cooper Clinic is not directly liable as an "institution" for failing to report the suspected child abuse of Trenton McMillan.

Similarly, Cooper Clinic is not vicariously liable for Dr. Staudt's failure to report the suspected child abuse. Under the doctrine of *respondeat superior*, an employer may be held vicariously

liable for the tortious conduct of an employee or agent if the evidence shows that such conduct was committed within the scope of the agent's employment. *St. Joseph's Reg'l Health Ctr. v. Munos*, 326 Ark. 605, 612, 934 S.W.2d 192, 195 (1996). The test for whether an employee is acting within the scope of his employment is whether the individual is carrying out the "object and purpose of the enterprise," as opposed to acting exclusively in his own interest. *Porter v. Harshfield*, 329 Ark. 130, 137, 948 S.W.2d 83 (1997). In other words, "a principal can be held liable for the intentional torts of its agent only when the agent's tortious conduct is taken in furtherance of the agency, where the agent is (ostensibly) acting for the benefit of the principal. *Davis v. Fulton County, Arkansas*, 884 F. Supp. 1245 (E.D. Ark. 1995) (citing *National Bank of Commerce v. HCA Health Servs. of Midwest, Inc.*, 304 Ark. 55, 58, 800 S.W.2d 694, 697 (1990); *Dillard Dep't Stores, Inc. v. Stuckey*, 256 Ark. 881, 882-883, 511 S.W.2d 154, 155 (1974); *St. Louis Iron Mountain & So. Ry. Co. v. Grant*, 75 Ark. 579, 584-86, 88 S.W. 580, 582-583 (1905) and Restatement (Second) of Agency §§ 219(2)(d), 245 (1958)). In this case, we have already held that Cooper Clinic had no duty under the statute to report the suspected child abuse of Trenton McMillan. Dr. Staudt admittedly had a duty under the statute to report the suspected abuse, but her statutorily-imposed duty was an individual duty that did not extend to the clinic. As the Child Maltreatment Act imposes no duty on the clinic to report the suspected child abuse, Dr. Staudt's responsibility to report suspected child abuse cannot be said to benefit Cooper Clinic — that is, Dr. Staudt's decision to report or not to report suspected child abuse is not the "object and purpose" of Cooper Clinic, but rather such a decision is "exclusively in [Dr. Staudt's] interests." Thus, not only did the clinic have no duty *itself* under the statute to report suspected child abuse, but it also cannot be held vicariously liable for Dr. Staudt's failure to report. We therefore conclude that the circuit court erred in denying Cooper Clinic's directed-verdict motion because the clinic is not a mandatory reporter under Ark. Code Ann. § 12-12-507 (Supp. 2005); nor can it be vicariously liable when an employee such as Dr. Staudt, who has a statutorily-imposed individual duty to report under section 12-12-507, fails to report suspected child abuse. In view of our holding on this first point, we need not address the

appellant's remaining points on direct appeal. Likewise, the appellee's two points of error on cross-appeal are rendered moot by our reversal and dismissal on direct appeal.

Reversed and dismissed.