Kevin MARTIN *v.* Melissa Martin PIERCE

06-950                                    257 S.W.3d 82

Supreme Court of Arkansas
Opinion delivered May 17, 2007

*Gibson & Hashem, PLC*, by: *Paul Keith*, for appellant.

*Byrd Law Firm, P.A.*, by: *John Richard Byrd, Jr.*, for appellee.

JIM HANNAH, Chief Justice. Appellant Kevin Martin and Lisa Pierce were married in 1988. Pierce filed a complaint for divorce on June 2, 1997. The divorce was uncontested, and on July 8, 1997, on Pierce's complaint and Martin's waiver, a divorce decree was entered, finding, inter alia, that two children, C.M. and M.M., were born of the marriage. A property settlement agreement whereby Martin was to pay child support for C.M. and M.M. to Pierce was incorporated into the decree by reference.

On November 8, 2004, Pierce filed a petition for contempt against Martin for his alleged failure to pay child support. Martin responded, contending that Pierce's petition for contempt was barred by her fraud in representing to him during the marriage that C.M. was his child. Martin claimed that, prior to the entry of the divorce decree and unbeknownst to him, Pierce told an acquaintance that Martin was not C.M.'s father. Martin also contended that, subsequent to the divorce, Pierce had angrily stated to him, in C.M.'s presence, that C.M. was not his child.

Martin filed a counterclaim against Pierce, alleging fraud and requesting a paternity test as to C.M. He also requested that the support order concerning C.M. be vacated. The circuit court granted the petition for paternity testing. The results of the genetic testing established that Martin could not be the biological father of C.M.

Later, Martin amended his counterclaim to include damages for outrage and requested a jury trial. Because Martin also sought to vacate his legal obligations with respect to C.M., Pierce filed a motion for the appointment of an attorney ad litem. Martin responded that, because C.M. was not a party to the action, no ad litem should be appointed. The circuit court appointed an ad litem, concluding that, although C.M. was not a named party, he stood to be affected by the decisions rendered in the case.

On January 13, 2006, the attorney ad litem filed a motion for declaratory judgment, requesting that the circuit court declare that Martin was C.M.'s father. Martin responded, contending that declaratory relief was not appropriate for a nonparty. He supplemented his response to the motion to include the argument that it would be a violation of equal protection under the law if divorced men were not permitted, pursuant to Ark. Code Ann. § 9-10-115 (Repl. 2002), to challenge the paternity of children born during a previous marriage.

The circuit court concluded that Ark. Code Ann. § 9-10-115 was inapplicable to the present case, as it was a part of the Paternity Code, which does not apply to divorce decrees. Thereafter, the circuit court entered an order granting the ad litem's motion for declaratory judgment; thus, Martin was declared to be the father of C.M. In addition, the circuit court dismissed all of Martin's challenges with respect to the paternity of C.M. Martin now brings this appeal, arguing that the circuit court erred (1) in appointing an attorney ad litem for a person not a party to the

action and granting affirmative relief to that person; (2) in holding that Martin is foreclosed by res judicata from challenging his paternity of, and duty to pay child support for, C.M.; and (3) in finding that Ark. Code Ann. § 9-10-115, as amended in 2001, did not operate to allow Martin to challenge his paternity of, and duty to pay child support for, C.M. We find no error and, accordingly, we affirm.

We first address Martin's contention that the circuit court erred in appointing an attorney ad litem for C.M. because C.M. is not a party to the action. Martin argues that the circuit court misapprehended the claims embraced in the pleadings of the proper parties to this action. Specifically, Martin states that Pierce filed the motion for contempt for failure to pay child support, and he responded that any failure to pay was not wilful and counterclaimed for Pierce's "fraudulent and outrageous conduct in misleading him into believing he was C.M.'s biological father, asking that any orders to pay support be vacated and for damages." Thus, he contends that he and Pierce alone are the proper parties.

For his part, C.M. contends that the circuit court's appointment of an attorney ad litem was "certainly within the spirit of the creation of attorneys ad litem." In support of his argument, he cites the following statute: "When a circuit judge determines that the appointment of an attorney ad litem would facilitate a case in which custody is an issue and *further protect the rights of the child,* the circuit judge may appoint a private attorney to represent the child." Ark. Code Ann. § 9-13-106(b) (Repl. 2002) (emphasis added). C.M. acknowledges that, while the exact issue of custody may not have been in question in the circuit court, the corresponding issue of support was raised below. He states that Martin's counterclaim against Pierce for fraud and outrage brought to issue his paternity; therefore, it was prudent and proper for the circuit court to appoint an attorney ad litem to guard the individual interests of a minor child. We agree, and we cannot say that the circuit court abused its discretion in appointing an attorney ad litem to protect the interests of C.M.

Martin next contends that C.M. is not a person entitled to intervene in this action, and that to the extent that his motion for declaratory judgment is a petition for child support, he is not one of the parties prescribed by statute as having standing to bring a

child support action. First, we do not view the motion as a petition for child support because C.M. makes no request for child support in the motion.

Further, while C.M. captioned his pleading as a motion for declaratory judgment, it appears that it was actually a motion for summary judgment. In his motion, C.M. stated that "paternity is a question of law and not fact. Therefore, there is no issue of fact with regard to the paternity of C.M. that should be presented to the finder of fact." A pleading should be construed to give effect to the substance of the pleading rather than the form. *Wright v. City of Little Rock*, 366 Ark. 96, 233 S.W.3d 644 (2006). Here, C.M. filed the motion in an effort to bring an end to the litigation. Because he argued that there was no fact question at issue, we will treat the motion as one for summary judgment.

As to Martin's argument that the attorney ad litem should not have been permitted to file a pleading for C.M. in this case, we disagree. The circuit court has the inherent authority to appoint an attorney ad litem to represent a child's interests in disputes between divorcing parents. *See Kimmons v. Kimmons*, 1 Ark. App. 63, 613 S.W.2d 110 (1981). C.M. had an interest in his continued support and his legitimacy. An attorney ad litem "should be allowed an adequate opportunity to investigate the case, should be permitted to call his witnesses at trial and to cross examine those witnesses called by the parties. In short, he should be permitted to represent his child client as he would any client in preparation for and at trial." *Kimmons*, 1 Ark. App. at 68, 613 S.W.2d at 114. Here, by filing a pleading on behalf of C.M., the attorney ad litem represented C.M. as he would any client.

Martin argues that the circuit court erred when it held that he was foreclosed by res judicata from challenging his paternity of, and duty to pay child support for, C.M. In *Office of Child Support Enforcement v. Williams*, 338 Ark. 347, 995 S.W.2d 338 (1999), we held that a former husband's agreement to a divorce decree which stated that children were born of the marriage and his signing an agreed order on child support foreclosed a later action to establish that he was not the biological father for purposes of abating child support. Relying on *Williams* in the instant case, the circuit court concluded that, because the paternity of C.M. had been established pursuant to Martin and Pierce's divorce decree, the issue of C.M.'s paternity could never be relitigated. In *Williams*, we stated:

*Res judicata* bars relitigation of a subsequent suit when: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based upon proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies. *See Miller County v. Opportunities, Inc.,* 334 Ark. 88, 971 S.W.2d 781 (1998); *Hamilton v. Arkansas Pollution Control & Ecology Comm'n,* 333 Ark. 370, 969 S.W.2d 653 (1998). *Res judicata* bars not only the relitigation of claims that were actually litigated in the first suit but also those that could have been litigated. *See Wells v. Arkansas Pub. Serv. Comm'n,* 272 Ark. 481, 616 S.W.2d 718 (1981). Where a case is based on the same events as the subject matter of a previous lawsuit, *res judicata* will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *See Swofford v. Stafford,* 295 Ark. 433, 748 S.W.2d 660 (1988).

In the past, we have applied the doctrine of *res judicata* to the issue of paternity when paternity was established under a divorce decree. *See McCormac v. McCormac,* 304 Ark. 89, 799 S.W.2d 806 (1990). In *McCormac,* a mother sought to relitigate the paternity issue following a divorce decree. The request was included in her response to her ex-husband's motion to hold her in contempt for failing to comply with visitation. In the original divorce decree, the chancery court had found that it had subject-matter jurisdiction and had awarded custody, set child support, and fixed visitation. On appeal, we held that the mother's paternity claim was barred by *res judicata* because the mother pled in the divorce action that the child was born of the marriage, and the father admitted this fact. Our court of appeals has held similarly in several cases. *See, e.g., Golden v. Golden,* 57 Ark. App. 143, 942 S.W.2d 282 (1997); *Scallion v. Whiteaker,* 44 Ark. App. 124, 868 S.W.2d 89 (1993); *Department of Human Servs. v. Seamster,* 36 Ark. App. 202, 820 S.W.2d 298 (1991); *Benac v. State,* 34 Ark. App. 238, 808 S.W.2d 797 (1991).

The weight of authority in other jurisdictions is in accord with this view of the res judicata effect of divorce decrees on the paternity issue. *See, e.g., In re Paternity of Rogers,* 697 N.E.2d 1193 (Ill. App. Ct. 1998); *Love v. Love,* 959 P.2d 523 (Nev. 1998); *Godin v. Godin,* 725 A.2d 904 (Vt. 1998); *Gann v. Gann,* 705 So. 2d 509 (Ala. Civ. App. 1997); *Grice v. Detwiler,* 488 S.E.2d 755 (Ga. Ct. App. 1997); *Beyer v. Metze,* 482 S.E.2d 789 (S. C. Ct. App. 1997); *In re A.L.J., a/k/a A.L.E.,* 929 S.W.2d 467 (Tex. Ct. App. 1996); *see also* Donald M. Zupanec, Annotation, *Effect, In Subsequent*

*Proceedings, of Paternity Findings or Implications in Divorce or Annulment Decree or in Support or Custody Order Made Incidental Thereto,* 78 A.L.R.3d 846.

The Vermont Supreme Court set out succinctly the policy considerations which favor this principle:

Although we understand plaintiff's interest in ascertaining the true genetic makeup of the child, we agree with the many jurisdictions holding that the financial and emotional welfare of the child, and the preservation of an established parent-child relationship, must remain paramount . . . . Whatever the interests of the presumed father in ascertaining the genetic "truth" of a child's origins, they remain subsidiary to the interests of the state, the family, and the child in maintaining the continuity, financial support, and psychological security of an established parent-child relationship. Therefore, absent a clear and convincing showing that it would serve the best interests of the child, a prior adjudication of paternity is conclusive.

*Godin,* 725 A.2d at 910 (citations omitted). The Vermont Supreme Court further noted that its holding would deter parents who might seek to dissolve their parental bonds for financial or for other self-serving reasons. *See Hackley v. Hackley,* 395 N.W.2d 906, 913-14 (Mich. 1986) (best interests of child in maintaining stability and preventing psychological trauma must prevail over unfairness to father; contrary decision would result in chaos and humiliation); *In re Paternity of JRW & KB,* 814 P.2d 1256,1265 (Wyo. 1991) ("Because of the potentially damaging effect that relitigation of a paternity determination might have on innocent children, the doctrines of res judicata and collateral estoppel are rigorously observed in the paternity context.").

In the case before us, the divorce decree stated that the children were born of the marriage, and the chancery court awarded custody, ordered child support, and set visitation. The issue of paternity, accordingly, was decided. *See McCormac v. McCormac, supra; Anderson v. Anderson,* 552 N.E.2d 546 (Mass. 1990) (a divorce decree is an adjudication of the paternity of a child of the marriage); *Godin v. Godin, supra* (paternity necessarily determined in original divorce proceeding, which awarded child support). Moreover, the appellee had the opportunity to raise and litigate the paternity issue, but he failed to do so. In this regard, there was some evidence, based on Brenda Williams's testimony, that he knew that the two

boys were not biologically his much earlier. He also signed an agreed order in 1996, admitting that he was the father of the children. Under these circumstances, we hold that the principle of *res judicata* applies and that the chancery court erred in failing to do so.

*Williams*, 338 Ark. 347, 350-52, 995 S.W.2d 338, 339-41 (1999).

In the instant case, Martin failed to contest any issues in the divorce, including the paternity of C.M. That issue was decided in the divorce decree. Nevertheless, Martin argues that the fraud committed by Pierce excuses him from the finding of paternity in the divorce decree. Specifically, Martin claims that, pursuant to Arkansas Civil Procedure Rule 60, he is entitled to relief. Rule 60(c)(4) provides that a judgment may be set aside any time after ninety days "[f]or misrepresentation or fraud (whether heretofore denominated intrinsic or extrinsic) by an adverse party." Martin points out that in *Dickson v. Fletcher*, 361 Ark. 244, 206 S.W.3d 229 (2005), this court extended the operation of Rule 60(c)(4) to include constructive fraud where a husband failed to disclose his ownership of securities in his discovery responses and the divorce decree entered in 1994 did not address division of the nondisclosed securities as marital property. Martin argues that, like the appellant in *Dickson*, he should have an opportunity to modify his divorce decree because his ex-spouse committed fraud.

C.M. contends that *Dickson* is inapplicable to the facts of the instant case because the public policy against the bastardization of a sixteen-year-old child is not analogous to the intentional concealment of marital property. We agree, and we decline to extend our decision in *Dickson, supra,* to the facts of the instant case. In light of the policy considerations discussed in *Williams, supra,* we hold that, under the facts of the case at bar, Rule 60(c)(4) cannot be used as a means to modify a divorce decree.

We now turn to Martin's argument that the circuit court erred in its reliance on *Williams* because that case has been abrogated by Act 1736 of 2001, which substantially amended Ark. Code Ann. § 9-10-115 to allow a legal father to have an absolute right to a paternity test and have his child-support obligation terminated if it is determined that he is not the biological father. In *Williams*, we addressed a prior version of Ark. Code Ann. § 9-10-115, stating:

> Although it is not briefed by OCSE and seemingly was not relied on by the chancery court, we feel constrained to address Ark. Code

Ann. § 9-10-115(d) (Supp.1995), which addresses modification of a child-support order when it is determined in a paternity suit that a man is not the biological father of a child. *See, e.g., Littles v. Flemings,* 333 Ark. 476, 970 S.W.2d 259 (1998). In *Littles,* this court relied on § 9-10-115(d) and held that a man who had been adjudicated the father of a child in a paternity suit was entitled to relief from future child-support obligations, after scientific testing proved that he was not the child's biological father. We said: "[T]he statute *mandates* that an adjudicated father in Mr. Littles's position receive prospective relief from a child-support judgment." *Littles,* 333 Ark. at 481, 970 S.W.2d at 262.

Section 9-10-115, however, is part of the Paternity Code and was intended to apply only to judicial findings of paternity or to acknowledgments of paternity by both parents under Ark. Code Ann. § 9-10-120 (Supp.1995). There is nothing in § 9-10-115 to even suggest that its applicability extended to divorce decrees. Furthermore, we view an adjudication of paternity in a paternity suit, as well as an acknowledgment of paternity by both parents under the Paternity Code as being vastly different from an adjudication of paternity in a divorce decree. In the latter situation, there has been a marriage and in most situations, the children have known the husbands as their fathers. A parental relationship has, thus, been established with the child or children. In a paternity suit, the parent-child relationship has not been forged, and the stability of the family unit is not an issue. This distinction lies at the heart of the disparate treatment accorded scientific testing after a finding of paternity under the Paternity Code and scientific testing which occurs after a divorce decree under our caselaw.

*Williams,* 338 Ark. at 353, 995 S.W.2d at 341 (emphasis added) (footnote omitted).

Subsequent to our decision in *Williams,* the General Assembly passed Act 1736 of 2001, entitled, "AN ACT TO PROVIDE THAT AN ADJUDICATED FATHER IS ENTITLED TO ONE PATERNITY TEST AT ANY TIME DURING THE PERIOD OF HIS CHILD SUPPORT OBLIGATION." Act 1736 amended Ark. Code Ann. § 9-10-115 to include the following relevant provisions:

(e)(1)(A) When any man has been adjudicated to be the father of a child or is deemed to be the father of a child pursuant to an acknowledgment of paternity without the benefit of scientific

testing for paternity and as a result was ordered to pay child support, he shall be entitled to one (1) paternity test, pursuant to § 9-10-108, at any time during the period of time that he is required to pay child support upon the filing of a motion challenging the adjudication or acknowledgment of paternity in a court of competent jurisdiction.

. . . .

(f)(1) If the test administered under subdivision (e)(1)(A) of this section excludes the adjudicated father or man deemed to be the father pursuant to an acknowledgment of paternity as the biological father of the child and the court so finds, the court shall set aside the previous finding or establishment of paternity and relieve him of any future obligations of support as of the date of the finding.

Ark. Code Ann. § 9-10-115 (Repl. 2002).

The issue before us is one of statutory construction. This court reviews issues of statutory construction under a de novo standard. *Cooper Clinic, P.A. v. Barnes*, 366 Ark. 533, 237 S.W.3d 87 (2006). Because it is for this court to decide the meaning of the statute, we are not bound by the circuit court's determination of the statute's meaning. *Id.* The basic rule of statutory construction is to give effect to the intent of the General Assembly. *Id.* The first rule in determining the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* This court will construe a statute so that no word is left void, superfluous or insignificant, with meaning and effect given to every word in the statute if possible. *Id.* When the language of the statute is plain and unambiguous, conveying a clear and definite meaning, we need not resort to the rules of statutory construction. *Id.* A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Id.*

Upon review of the language in Act 1736 of 2001, we are not convinced that the General Assembly intended to overrule our decision in *Williams*. In *Williams*, we made it clear that Ark. Code Ann. § 9-10-115 is a part of the Paternity Code and is intended to apply only to judicial findings of paternity or to acknowledgments of paternity by both parents under Ark. Code Ann. § 9-10-120 (Supp. 1995). *Williams*, 338 Ark. at 353, 995 S.W.2d at 341. Further, we stated that there is nothing in § 9-10-

115 to indicate that it applies to divorce decrees. *Id.* at 353, 995 S.W.2d at 341.[1] Although the statute has been amended since we handed down our decision in *Williams*, the fact remains that the statute is still a part of the Paternity Code. The legislature is presumed to know the decisions of the supreme court, and it will not be presumed in construing a statute that the legislature intended to require the court to pass again upon a subject where its intent is not expressed in unmistakable language. *Books-A-Million, Inc. v. Ark. Painting & Specialties Co.*, 340 Ark. 467, 10 S.W.3d 857 (2000). Despite the fact that the *Williams* court made a distinction between adjudicated fathers under the Paternity Code and adjudicated fathers under divorce decrees, the legislature did not see fit to enact legislation outside the Paternity Code regarding adjudicated fathers. We hold that Act 1736 of 2001 did not abrogate our decision in *Williams*.[2] Section 9-10-115, as amended in 2001, does not apply to a paternity determination arising as a matter of presumption under a divorce decree.

Finally, Martin argues that if he is not allowed to question the paternity of a child he did not sire, but was deceived into acknowledging, he, as a divorced man, will be denied equal protection of the law. He states that Pierce, as the biological mother, has a right to challenge paternity, pursuant to Ark. Code Ann. § 9-10-104 (Repl. 2002), and that a person claiming to be the biological father of a child to a married woman who was not his wife when the child was conceived is entitled to challenge the presumption of paternity. *See R.N. v. J.M. and B.M.*, 347 Ark. 203, 61 S.W.3d 149 (2001). Martin fails to develop his equal-protection argument; therefore, we do not address it. This court will not

---

[1] *See also Office of Child Support Enforcement v. Willis*, 347 Ark. 6, 16, 59 S.W.3d 438, 445 (2001) ("[W]e do not view what occurred in the 1992 divorce as either an adjudication of paternity or voluntary acknowledgment of paternity as required under the Paternity Code. *See* Ark. Code Ann. §§ 9-10-101 through 202 (Repl. 1998). *See also Office of Child Support Enforcement v. Williams, supra* (provisions of the Paternity Code do not apply to determinations arising as matter of presumption under a divorce decree). It stands to reason that without a prior adjudication of paternity or an acknowledgment of the same, there can be no modification of paternity.").

[2] If the General Assembly had intended that Act 1736 of 2001 overrule *Williams* and apply to divorce decrees as well as actions to determine paternity under the Paternity Code, it could have expressly stated so.

research or develop an argument for an appellant. *See, e.g., Baker v. Norris*, 369 Ark. 405, 255 S.W.3d 466 (2007).

Affirmed.

CORBIN and BROWN, JJ., dissent.

ROBERT L. BROWN, Justice, dissenting. Because the General Assembly has expressly and unambiguously relieved an adjudicated father of the obligation to pay child support, after scientific testing shows he is not the father, I dissent from the majority opinion.

The majority holds that once there is a divorce decree adjudicating a man to be the father, that adjudication is irrevocable regardless of future scientific testing showing the man could not be the father. I disagree. Act 1736 of 2001 amended Ark. Code Ann. § 9-10-115 (Supp. 1999), by adding the following language in an attempt to clarify the Paternity Code:

> (e)(1)(A) When *any man* has been adjudicated to be the father of a child or is deemed to be the father of a child pursuant to an acknowledgment of paternity without the benefit of scientific testing for paternity and as a result was ordered to pay child support, he shall be entitled to one (1) paternity test, pursuant to § 9-10-108, at any time during the period of time that he is required to pay child support upon the filing of a motion challenging the adjudication or acknowledgment of paternity in a court of competent jurisdiction.
>
> . . . .
>
> (f)(1) If the test administered under subdivision (e)(1)(A) of this section excludes the adjudicated father or man deemed to be the father pursuant to an acknowledgment of paternity as the biological father of the child and the court so finds, *the court shall set aside the previous finding or establishment of paternity and relieve him of any future obligations of support as of the date of the finding.*

Ark. Code Ann. § 9-10-115(e)(1)(A) and (f)(2) (Repl. 2002) (emphasis added).

Act 1736 of 2001 was passed at the next general legislative session after this court's decision in *Office of Child Support Enforcement v. Williams*, 338 Ark. 347, 995 S.W.2d 338 (1999). In *Williams*, we held:

- *Res judicata* bars relitigation of paternity where paternity was established in the prior divorce decree.

- Previous § 9-10-115(d), which addresses modification of child support when an adjudicated father is proven not to be the biological father of the child, after scientific testing, is part of the Paternity Code and is vastly different from an adjudication of paternity in a divorce decree.

- The child support obligation of the adjudicated father should continue.

The broad language added to § 9-10-115 by Act 1736 states that the section applies to "any man" adjudicated to be the father of a minor child. In *McCormac v. McCormac*, 304 Ark. 89, 799 S.W.2d 806 (1990), this court specifically said that a divorce decree is an adjudication of paternity. Section 9-10-115(e)(1)(A) is unambiguous, and we construe it by giving the words their ordinary and usually accepted meaning. *See Weiss v. Maples*, 369 Ark. 282, 253 S.W.3d 907 (2007). The words "any man" clearly indicate that the General Assembly intended for the subsection to apply to any man previously adjudicated to be the father of a child, whether in a paternity action or as part of a divorce proceeding. To draw a distinction between the two flies in the face of the clear and exact language of Act 1736.

Furthermore, by Act 1736, the General Assembly expanded the time frame for challenging a paternity adjudication. Under the previous version of the statute, an adjudication could only be modified within three years of its entry. *See* Ark. Code Ann. § 9-10-115(f) (Supp. 1999). Act 1736 now provides that an adjudication may be challenged "at any time during the period of time that [the adjudicated father] is required to pay child support." Ark. Code Ann. § 9-10-115(e)(1)(A) (Repl. 2001). The statute thus applies to Mr. Martin, as he was still obligated to pay child support at the time he challenged his paternity.

The General Assembly has now mandated that Mr. Martin, though the adjudicated father in a divorce decree, be relieved of his obligation to pay future child support under Act 1736 by expanding the pertinent section to apply to "any man." The breadth of the language in Act 1736 manifestly encompasses divorce decrees. The circuit court did not interpret the new act that way, but instead dismissed Mr. Martin's challenge to the

child-support obligation. This was error in my judgment. Yet, the majority affirms the error.

I respectfully dissent.

CORBIN, J., joins this dissent.