State of ARKANSAS OFFICE of
CHILD SUPPORT ENFORCEMENT and Norma Westbrook *v.*
Anthony L. PARKER

06-415 246 S.W.3d 851

Supreme Court of Arkansas
Opinion delivered January 11, 2007

*Mark L. Ross* and *Donna Denise Galloway*, for appellants.

Appellee, pro se.

D ONALD L. CORBIN, Justice. Appellants State of Arkansas Office of Child Support Enforcement and Norma West-brook (collectively known as OCSE) appeal the Pulaski County Circuit Court's February 28, 2006, final order, setting aside the default judgment of paternity entered against Appellee Anthony L. Parker, finding Parker was not the biological father of B.P. and that he did not owe arrearages, and abating any future child-support obliga-tion. On appeal, OCSE raises two arguments for reversal: the trial court (1) erred in not granting a judgment for past-due arrearages because Ark. Code Ann. § 9-10-115(f)(1) (Supp. 2005) only provides relief from any future child-support obligation; (2) abused its discre-tion in entering an order that was not supported by sufficient law and relying on facts that were not raised by any party of record. This case was originally submitted to the court of appeals; however, it was certified to this court in accordance with Ark. Sup. Ct. R. 1-2(b)(4) and (5) because it involves a question of substantial public interest and an issue needing clarification or development of the law. Specifically, the court of appeals found that the primary question was whether a man, who has been adjudicated as the biological father of a child but is later determined not to be the father, is relieved of his obligation to pay all past-due child support. We hold that, under section 9-10-115(f)(1), the disestablished father cannot be relieved of past-due child support. Therefore, the trial court erred in granting this relief to Parker, and we reverse and remand.

On April 18, 2002, OCSE filed a paternity complaint, pursuant to Ark. Code Ann. § 9-14-210(d) (Repl. 2002), against Parker to establish paternity for B.P.[1] Parker did not answer the complaint and, on June 20, 2002, the trial court entered a default judgment of paternity. In that order, the trial court set child support at $24 per week and granted a retroactive support award of $4,446 to be paid by Parker.

Parker never paid any child support and, on March 7, 2003, OCSE filed a motion for contempt against Parker. He was served with an order and a citation to appear in court on April 24, 2003. Parker did not appear for court. Because of this failure to appear,

---

[1] Westbrook is the biological mother of B.P. and is a recipient of services under Title IV-D of the Social Security Act. Consequently, OCSE is involved in the enforcement of a support order pursuant to its responsibilities under section 9-14-210(d).

the trial court issued a pick-up order on May 6, 2003. About a year after the pick-up order was entered, OCSE found an employer of Parker's and, from June 2004 until February 2005, deducted payments from Parker's paycheck.

In March 2005, Parker was arrested pursuant to the pick-up order. A hearing was immediately held and Parker orally requested a paternity test. The paternity test was granted and administered at the OCSE office. Following the test, it was determined that Parker was not the biological father of B.P. On September 21, 2005, OCSE filed a motion for judgment in which it stated that Parker was excluded as the biological father through DNA testing and requested that the trial court issue a judgment in regards to past-due child support.

On February 14, 2006, a hearing was held on the motion for judgment. The following day the trial court issued an order abating the weekly $24 child-support payments, and finding that Parker was not the father of B.P. and that he was not responsible for any past-due child support. On February 24, 2006, OCSE filed its first notice of appeal, stating that the trial court's order finding that Parker was not responsible for past-due child support was in violation of section 9-10-115(f). Four days later, on February 28, 2006, the trial court issued a final order containing factual findings as well as its previous conclusions. In the February 28 order, the trial court explained that:

> This Court chooses to not award a judgment against this Defendant or make a finding of arrears in favor of the State as opposed to the custodial mother. To force a man to pay the State for AFDC/TEA payments made to a woman for a child that is not his violates all precepts of common law as to who is responsible for supporting a child.

In response to this final order, OCSE filed a motion to reconsider.[2] Then, on March 30, 2006, OCSE filed a second notice of appeal from the February 28 final order holding that Parker was not liable for any arrearages up to the finding of nonpaternity and that section 9-10-115(f) is silent in cases where there has been no acknowledgment of paternity.

---

[2] The trial court never ruled on this motion. Therefore, it was deemed denied thirty days from the date of filing. *See* Ark. R. Civ. P. 59(c).

OCSE's first argument for reversal is that the trial court erred in not granting a judgment for past-due arrearages, which had accumulated from the date of the original paternity order until the results of the paternity test were obtained, because section 9-10-115(f)(1) only provides relief from any future child-support obligation. Specifically, OCSE asserts that the trial court's decision to deny past-due child support up to the date that Parker was determined not to be the father was completely against statutory and case law.

Our standard of review for an appeal from a child-support order is *de novo* and we will not reverse a finding of fact by the trial court unless it is clearly erroneous. *Ward v. Doss,* 361 Ark. 153, 205 S.W.3d 767 (2005). In reviewing a trial court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.* However, a trial court's conclusion of law is given no deference on appeal. *Id.*

In the present case, we are also being asked to interpret section 9-10-115(f)(1). Similar to our review of child-support orders, we review issues of statutory construction *de novo* as it is for this court to decide what a statute means. *Department of Human Servs. & Child Welfare Agency Review Bd. v. Howard,* 367 Ark. 55, 238 S.W.3d 1 (2006). While we are not bound by the trial court's interpretation, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. *Id.* The basic rule of statutory construction is to give effect to the intent of the legislature. *Id.* Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Id.* In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* We construe the statute so that no word is left void, superfluous, or insignificant, and we give meaning and effect to every word in the statute, if possible. *Id.*

Section 9-10-115(f)(1) states:

> If the test administered under subdivision (e)(1)(A) of this section excludes the adjudicated father or man deemed to be the father pursuant to an acknowledgment of paternity as the biological father of the child and the court so finds, the court shall set aside the previous finding or establishment of paternity and relieve him of any future obligation of support as of the date of the finding.

A plain reading of this statute allows for only one interpretation: an individual who was an adjudicated father or who acknowledged paternity, but was later determined not to be the father, shall have the previous finding or establishment of paternity set aside and he shall be relieved of any *future* obligation of support. *See Littles v. Flemings*, 333 Ark. 476, 970 S.W.2d 259 (1998); *see also State v. Phillippe*, 323 Ark. 434, 439, 914 S.W.2d 752, 755 (1996) (holding that "the statute plainly directs the court to relieve the alleged father of only future obligation of support").[3]

In *Phillippe*, we held that "[t]he trial court was not authorized to relieve the appellee of past support by the applicable statutes, which specifically set out the course of action the trial court shall take when an adjudicated father is later determined not to be the biological father." *Id.* There, a default order of child support had been entered finding the appellee to be the father of his wife's minor child and child-support payments had been collected pursuant to that order until a court-ordered paternity test revealed that he was not the father. Following this finding, the trial court entered an order dismissing the support action with prejudice and requiring the appellant, the State of Arkansas Child Support Enforcement Unit, to refund the support money it had collected. Thus, the issue was whether it was proper for a trial court to issue a refund on child-support payments previously made after the appellee was determined, by a paternity test, not to be the father. On appeal, we reversed the trial court's order and held that the order of refund was contrary to the preponderance of the evidence and contrary to the law.

Both the plain reading of section 9-10-115(f)(1) and our prior case law make it clear that a previously adjudicated or acknowledged father cannot be relieved of past-due child support because the statute only refers to relief from any future obligation of support. This interpretation is consistent not only with our rules of construction, but also with the well-established principle that once a child-support payment falls due, it becomes vested and a debt due to the payee. *See Holley v. Holley*, 264 Ark. 35, 568 S.W.2d 487 (1978). Although there are some circumstances in which a court is justified in withholding judgment for unpaid child support, those cases are limited to situations where the mother

---

[3] Both *Littles* and *Phillippe* involved previous versions of section 9-10-115(f)(1). *See* Ark. Code Ann. § 9-10-115(d) (Supp. 1995); Ark. Code Ann. § 9-10-115(d) (Supp. 1993).

having custody deprives the father of temporary custody or visitation by failing to comply with the terms of a valid decree or where the father presents an equitable defense, such as laches or an equitable estoppel. *See Burnett v. Burnett*, 313 Ark. 599, 855 S.W.2d 952 (1993); *Holley*, 264 Ark. 35, 568 S.W.2d 487. The present case does not fall within any of these circumstances.

Here, in a default judgment, Parker was adjudicated as the father of B.P. and ordered to pay a sum of $24 per week in child support, as well as $4,446 in retroactive support as of June 20, 2002. Parker did not pay any child support and, on March 7, 2003, OCSE filed a motion for contempt. Parker was ordered to appear in court, and when he did not, the trial court issued a pick-up order. Parker was not arrested pursuant to the pick-up order until March 2005. At that time, Parker requested a paternity test, which resulted in the determination that Parker was not the father of B.P. On September 21, 2005, OCSE filed a motion for judgment stating that, through DNA testing, Parker had been excluded as the biological father. The motion also requested a judgment of child-support arrearages that had accumulated since the June 20, 2002, default judgment of paternity through July 31, 2005. After a hearing on the motion, the trial court found that, because Parker was not the biological father, he was not responsible for any past or future child support.

Upon review, the trial court correctly found that Parker did not have to pay any future child support; however, it was an error for the trial court to find that Parker was not responsible for any past-due child support. The General Assembly specifically stated that the duty to pay child support and other legal obligations is not suspended while a motion challenging the adjudication of paternity is pending. Ark. Code Ann. § 9-10-115(e)(2) (Supp. 2005). Reading this section in conjunction with section 9-10-115(f)(1), it is clear that the General Assembly did not intend for a previously adjudicated father to be relieved of past-due child support upon a finding that he is actually not the biological father.[4] Therefore, Parker was under an obligation to pay previously ordered child

---

[4] It should also be noted that the General Assembly's most recent amendment of section 9-10-115 occurred in 2001, well after *Littles*, 333 Ark. 476, 970 S.W.2d 259, and *Phillippe*, 323 Ark. 434, 914 S.W.2d 752, were decided. *See* Act 1736, § 1 of 2001. It is presumed that the General Assembly is aware of this court's decisions. *See Colburn v. State*, 352 Ark. 127, 98 S.W.3d 808 (2003). At the time of its last revision, the General Assembly could have revised section 9-10-115(f)(1) to cover relief from past-due and future child support. It

support up until the time he was determined not to be the father, and he could only be relieved of any future obligation.

 The trial court erred when it found that Parker did not have to pay the past-due child support. Section 9-10-115 is clear: after a finding that a previously adjudicated or acknowledged father is not the biological father, an abatement can only be applied to any future obligation of support. Consequently, the trial court erred in denying OCSE's motion for judgment as it related to past-due child support.

Because we reverse on this issue, it is not necessary that we decide OCSE's remaining argument. We reverse only that portion of the order finding that Parker did not have to pay the arrearages, and, on remand, direct the trial court to determine the amount of arrearages owed.

Reversed and remanded.

BROWN, J., concurs.

DANIELSON, J., not participating.

ROBERT L. BROWN, Justice, concurring. The decision to-day arguably reaches a grossly unfair result by saddling a person with a past-due support debt when that person has never claimed to be the father of the child and when he has been found, after paternity tests, not to be the biological father. Two previous cases are cited as authority for this conclusion. *See Littles v. Flemings*, 333 Ark. 476, 970 S.W.2d 259 (1998) (statute only allows relief from back child support for non-father if he had physical custody of the child); *State v. Phillippe*, 323 Ark. 434, 914 S.W.2d 752 (1996) (proven non-father married to the mother could not claim refund for previous support payments made pursuant to valid court order where money had already been distributed).

I question in my own mind whether these cases are on all fours factually with the case before us. In addition, I question whether this court has actually held that non-biological fathers (1) who have never held themselves out as a parent, (2) who have not paid child support, and (3) who have willingly taken a paternity

---

did not, and as such, it follows that the legislature only intended to relieve a previously adjudicated father, later found not to be the biological father, of any future obligation of child support.

test must pay accrued child support. The facts of the instant case appear to be different from the facts of our previous cases.

Two points occur to me in this regard. First, there is a policy issue of whether non-biological fathers have a duty to pay back child support in all instances. *See, e.g., Walter v. Gunter,* 367 Md. 386, 788 A.2d 609 (2002) (without paternity, there is no legal duty to pay accrued debt or arrearages). Secondly, by its interpretation today, this court is legislating by inference because the operative statute, Ark. Code Ann. § 9–10–115(f)(1) (Supp. 2005), is actually silent on the obligation of a non-father to pay back child support.

Two months ago in a case where the operative statute was silent on requirements relating to postnuptial agreements, we said:

> By its terms, the statute only applies to agreements made prior to marriage. If the legislature had intended for this statute to also apply to postnuptial agreements, it presumably would have included the appropriate language. We have noted, "[i]t is not the business of the courts to legislate, and if a change in the law in this respect is desired, the General Assembly is the branch of government whence change must come." *Dick v. State,* 364 Ark. 133, 217 S.W.3d 778 (2005) (citing *Southern Telephone Co. v. King,* 103 Ark. 160, 146 S.W. 489 (1912)).

*Stewart v. Combs,* 368 Ark. 121, 125, 243 S.W.3d 294, 298 (2006). Similarly, had the legislature intended to require proven non-fathers to pay past support, it seems that it would have clearly and precisely said so. It has not.

There is continued confusion over the issue of child-support arrearages under § 9–10–115(f)(1) among the bench and bar, as evidenced by the case at hand. I urge the General Assembly, which is now in session, to clarify § 9–10–115(f)(1) once and for all on whether child-support arrearages must be paid by a non-biological father in all instances.