Cynthia HARDY *v.* Reginald WILBOURNE

05-1335                                                             259 S.W.3d 405

Supreme Court of Arkansas
Opinion delivered June 21, 2007

[Rehearing denied September 6, 2007.]

*William C. Plouffe, Jr.*, for appellant.

No response.

Paul Danielson, Justice. Appellant Cynthia Hardy appeals from the circuit court's order denying her petition for adjudication of paternity and back child support, which she filed against appellee Reginald Wilbourne, following the death of their child. Her sole point on appeal is that the circuit court erred in denying the petition. We affirm the circuit court's order.

A review of the record reveals that the minor child at issue, Catrice Allison Johnson, was born to Hardy and Wilbourne on March 25, 1989, and died on November 21, 2003, at the age of fourteen. Following a wrongful-death suit, the Union County Probate Court, in May 2005, approved a settlement by Catrice's estate, in the amount of $500,000, with one-third of the sum being approved for attorney's fees. That court then distributed the remaining proceeds in the following manner:

> 60% to Cynthia Hardy, mother
>
> 17.5% to W.J., Catrice's half-brother
>
> 17.5% to Z.R., Catrice's half-brother
>
> 5% to Reginald Wilbourne, father.

In the probate court's order, the probate court outlined its reasoning for rejecting Wilbourne's claim for one-third of the proceeds, saying:

3. The claim of Reginald Wilbourne for one-third of the remaining proceeds was not allowed based on the history of his relationship with the decedent. The decedent was conceived and born illegitimately. She was premature and encountered medical difficulties which required her to remain in the hospital for two to four months after birth. Her twin sibling died. Reginald Wilbourne did not visit her in the hospital and did not attend the funeral of the twin. He did not claim paternity or give the child his name. The child suffered from cerebral palsy, yet Reginald Wilbourne did not contribute to her care, maintenance, support, or medical needs. He did not remember her on birthdays or holidays. Reginald Wilbourne was not a factor in the life of decedent and he did not act responsibly. His testimony to the contrary is not credible. However, he did visit the child occasionally and she knew him to be her father, apparently loving him for that fact alone. She was his only child and he has grieved over her death. On this basis Reginald Wilbourne is awarded a small part of the proceeds.

On June 6, 2005, Hardy petitioned the circuit court for an adjudication of paternity and back child support.[1] In her petition, Hardy asserted that Wilbourne did not pay any child support during the life of her daughter and that Hardy was responsible for the costs of raising her. She further asserted that, as stated above, the probate court, in a determination of a wrongful-death claim, found that Wilbourne had not paid child support, nor contributed to Catrice's medical care. Hardy stated that during the hearing before the probate court, Wilbourne admitted that if he were to receive a portion of the settlement, he would pay child support. Accordingly, Hardy prayed that the circuit court adjudicate paternity, award her reasonable back child support, freeze the monies due Wilbourne from the wrongful-death suit until the instant matter was resolved, award her reasonable attorney's fees and costs, and award her any and all additional relief available. Wilbourne responded and asserted two affirmative defenses: (1) that the circuit court had no jurisdiction over the probate court's division of the wrongful-death settlement; and (2) that Hardy had never sought court-ordered child support during her daughter's life and that she was equitably estopped from doing so. In addition, Wilbourne pled laches, unclean hands, accord and satisfaction, and statute of limitations.

---

[1] Hardy further made an emergency motion to freeze monies.

On July 8, 2005, the circuit court entered an order in which it found that, based on the evidence presented at a hearing held the day before and the applicable law, it did not have the authority to order Wilbourne's monies held, which were presently on deposit. For that reason, the circuit court denied Hardy's motion to freeze those funds. However, the circuit court did order Wilbourne to comply with a standing order, to which all parties to domestic-relations actions in the Thirteenth Judicial District were subject.[2]

A hearing was then held on August 24, 2005, on the remaining issues before the circuit court. At that time, the circuit court acknowledged the following stipulations by the parties:

> The parties in chambers have stipulated to certain facts. I would like to go ahead and put that on the record at this time. First, that the Defendant is the natural father of the minor child Catrice Allison Johnson, born March 24, 1989, who died November 21, 2003.
>
> Number two, that the Defendant did not pay any — excuse me, that there was no child support action initiated during the life of the child. Number three, the child is deceased which we have already stated. Number four, no Motion for Child Support was — that the Motion for Child Support that is presently pending and is today before the Court was filed after the death of the child. And number five, that the Defendant was in prison for a period of seven years during the life of the child.
>
> . . . .
>
> At least seven years, yes. . . .

In addition, the order of the probate court approving the wrongful-death settlement was received without objection. Following the arguments of counsel and the testimony of the parties, the circuit court gave the parties permission to file posttrial briefs and took the matter under advisement.

---

[2] Per the circuit court's order, paragraph three of the standing order provided: "Each party is hereby enjoined and restrained from selling, encumbering, contract[ing] to sell, or otherwise disposing of or removing from the jurisdiction of this Court any of the property belonging to the parties except in the ordinary course of business." The circuit court then found that any monies distributed to Wilbourne were subject to the standing order.

On September 8, 2005, the circuit court entered its order denying Hardy's petition for child support. In it, the circuit court recited the distribution of the wrongful-death settlement and noted that Hardy filed her petition subsequent to the probate court's order of distribution. The circuit court found that the testimony had established that neither Hardy, nor anyone on her behalf, had brought an action against Wilbourne for the nonpayment of child support. It further found that there were no judgments pending for child-support arrearages, nor had paternity of Catrice been established prior to the bringing of Hardy's petition almost two years after Catrice's death.

The order further observed that there was conflicting testimony as to whether Hardy requested child support from Wilbourne during Catrice's life and noted that Wilbourne denied child support was ever requested. The circuit court then recited several statutes relating to child support, including Arkansas Code Annotated §§ 9-14-237(a)(1) (Supp. 2005), 9-14-235 (Repl. 2002), and 9-14-105(b) (Repl. 2002). It then concluded:

> This action was brought following the issuance of an Order of Distribution of Settlement Proceeds related to the unfortunate accident causing the death of the minor child. Said wrongful death action was pursued by plaintiff as special administratrix of the estate of the child. In its decision as to the distribution of said proceeds the Court specifically noted that defendant did not claim the paternity of the child nor did he contribute to the child's care, maintenance, support or medical needs. The nonpayment of child support was obviously a factor the Court considered in its decision to award plaintiff and her two minor children 95% of the total net proceeds of the settlement.
>
> The claim of plaintiff was not initiated during the life of the child and any order awarding support would not benefit the child. Plaintiff should not prevail legally or equitably in any action at this time against defendant for back child support and the petition for said support is denied.

Hardy now appeals.

Specifically, Hardy argues that the circuit court erred in denying her petition for child support for two reasons: (1) it erred in finding, as a basis for denying her petition, that the probate court considered the nonpayment of child support in its order of

distribution; and (2) that it erred in relying on Hardy's failure to initiate such a petition during the life of the child as a ground for denying the petition. She contends that the probate court did not distribute the settlement proceeds in the manner it did in an attempt to compensate her for Wilbourne's failure to pay child support during Catrice's life and submits that the probate court was without jurisdiction to even consider the issue of child support within the context of the wrongful-death action.[3] In addition, she urges that because she had custody of the child, she was entitled to bring an action for back child support and that such action survives the death of the minor child. She further contends that the obligation of child support, even without an order, survives the death of a child because an action for the collection of back child support is a creature of statute. Finally, she claims that her independent cause of action to collect back child support was not dependent upon whether the minor child was still alive at the time she brought her petition, as it was her individual right to bring suit to collect from Wilbourne for what she had already paid for the care and support of the child. Wilbourne does not respond.

Our standard of review for an appeal from a child-support order is de novo and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *See Arkansas Office of Child Support Enforcement v. Parker*, 368 Ark. 393, 246 S.W.3d 851 (2007). In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *See id.* However, a circuit court's conclusion of law is given no deference on appeal. *See id.*

The instant case requires us to determine whether a petition for child support may be initiated after the death of a child. We conclude that it cannot. Arkansas Code Annotated § 9-14-105(b) (Repl. 2002) permits the following to file a petition to require the noncustodial parent or parents of a minor child to provide support for the minor child:

> (1) Any parent having physical custody of a minor child;

> (2) Any other person or agency to whom physical custody of a minor child has been given or relinquished;

---

[3] We note that the decision of the probate court is not before us. Therefore, any arguments made by Hardy, which we construe as challenging the probate court's order, will not be addressed.

(3) A minor child by and through his guardian or next friend; or

(4) The Office of Child Support Enforcement of the Revenue Division of the Department of Finance and Administration when the parent or person to whom physical custody has been relinquished or awarded is receiving assistance in the form of Aid to Families with Dependent Children, Medicaid, Title IV-E of the Social Security Act — Foster Care, or has contracted with the department for the collection of support.

Ark. Code Ann. § 9-14-105(b) (Repl. 2002). "Minor child," as used in the statute, is defined as "a child less than eighteen (18) years of age[.]" Ark. Code Ann. § 9-14-105(d)(1) (Repl. 2002).

We review issues of statutory construction under a de novo standard. *See Cooper Clinic, P.A. v. Barnes*, 366 Ark. 533, 237 S.W.3d 87 (2006). Because it is for this court to decide the meaning of a statute, we are not bound by the circuit court's determination of the statute's meaning. *See id.* The basic rule of statutory construction is to give effect to the intent of the General Assembly. *See id.* The first rule in determining the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *See id.* This court will construe a statute so that no word is left void, superfluous or insignificant, with meaning and effect given to every word in the statute if possible. *See id.* When the language of the statute is plain and unambiguous, conveying a clear and definite meaning, we need not resort to the rules of statutory construction. *See id.* A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *See id.*

Here, the plain language of subsection (b)(1) requires that the parent petitioning for an order of child support have physical custody of the child. Because Catrina was deceased at the time Hardy filed her petition for child support, Hardy was without physical custody of her and was, thus, prohibited from filing a petition for child support. While subsection (e) of section 9-14-105 provides that "[a]ny action filed pursuant to this subchapter may be brought at any time up to and including five (5) years from the date the child reaches the age of eighteen (18) years of age[,]" the language of the subsection clearly presupposes that the child is still living, as the age of the child is the determining factor.

Hardy is correct that we have held that a parent has a legal obligation to support a minor child regardless of the existence of a support order. *See Ford v. Ford*, 347 Ark. 485, 65 S.W.3d 432 (2002). However, while Hardy claims that a cause of action for child support survives the death of a child, a review of our statutes reveals that that is simply not the case. As the circuit court pointed out in its order, Arkansas Code Annotated § 9-14-237(a)(1)(B)(iii) (Supp. 2005) specifically provides that an obligor's duty to pay child support shall terminate upon the death of the minor child:

> (a)(1) Unless a court order for child support specifically extends child support after these circumstances, an obligor's duty to pay child support for a child shall automatically terminate by operation of law:
>
> . . . .
>
> (B) When the child:
>
> . . . .
>
> (iii) Dies[.]

Ark. Code Ann. § 9-14-237(a)(1)(B)(iii) (Supp. 2005).[4] Thus, the plain language of the statute dictates that even were Hardy permitted to file a petition for retroactive child support, which she was not under section 9-14-105(b), Wilbourne's obligation to pay child support for Catrice terminated by operation of law upon Catrice's death. Accordingly, we hold that the circuit court did not err in denying Hardy's petition for child support, despite any language

---

[4] This statute was amended by the General Assembly in 2007; however, subsection (a)(1)(B)(iii) remains unchanged. *See* Act 337 of 2007, § 1. In addition, we observe, as the circuit court did, that the statutes do not preclude the payment of child-support arrearages or judgments in existence *at the time* of the child's death. *See* Ark. Code Ann. § 9-14-235 (Repl. 2002) (specifically providing that "[i]f a child support arrearage or judgment exists at the time when all children entitled to support reach majority, are emancipated, or die, or when the obligor's current duty to pay child support otherwise ceases, the obligor shall continue to pay an amount equal to the court-ordered child support . . . until such time as the child support arrearage or judgment has been satisfied"); Ark. Code Ann. § 9-14-237(a)(2) (Supp. 2005) ("Provided, however, that any unpaid child support obligations owed under a judgment or in arrearage pursuant to a child support order shall be satisfied pursuant to § 9-14-235.").

referencing the probate court's order. *See, e.g., Alphin v. Alphin*, 364 Ark. 332, 219 S.W.3d 160 (2005) (providing that this court can affirm the circuit court for reaching the right result, even if it announced a wrong reason).

Affirmed.