Tamara Kay WESLEY *v.* Carlos Deshaun HALL

CA 07-1293                                                    289 S.W.3d 143

Court of Appeals of Arkansas
Opinion delivered November 5, 2008

*Brenda Austin, LTD*, by: *Brenda Austin*, for appellant.

One brief only.

Karen R. Baker, Judge. Appellant Tamara Kay Wesley challenges the trial court's order finding that appellee Carlos DeShaun Hall was not the biological father of her child, setting aside the prior order of paternity, and ordering that any unpaid child

support under the previous orders also be set aside and vacated. The trial court in this case followed the provisions of Arkansas Code Annotated section 9-10-115 (Repl. 2008) in its disposition of this case. The amendments of this statute were in effect at the time the trial court entered its order. Accordingly, we affirm.

Appellant gave birth to a son on November 16, 2002. Two days later both she and appellee signed the acknowledgment of paternity in Fort Smith, Arkansas, where the child was born. On January 21, 2005, and October 31, 2006, orders were entered in Tennessee, where appellee lived, that established paternity and support, an educational trust, and medical payments for the child. The two orders were registered as foreign orders on November 8, 2006, and May 2, 2007, respectively. Appellant filed a petition for contempt citation and modification on November 14, 2006. A hearing was set on January 8, 2007. Appellee filed an amended petition to determine paternity, visitation, and support on January 4, 2007. The test results established that appellee was not the biological father. The court set aside the previous order of paternity, the orders for child support, vacated the outstanding amounts, and ordered that there be no refund for amounts previously paid.

Appellant argues that the trial court erred in ordering the paternity testing and in ordering that any unpaid child support owed under the previous orders was set aside and vacated.[1] The trial court followed the provisions of section 9-10-115 in effect at the time the court entered the order. The statute provides in relevant part as follows:

> (a) The circuit court may at any time enlarge, diminish, or vacate any order or judgment in the proceedings under this section except in regard to the issue of paternity as justice may require and on such notice to the defendant as the court may prescribe.

---

[1] While appellant states briefly that the trial court should not have ordered paternity testing because appellee failed to state sufficient facts to support his conclusion that there was a material mistake of fact, appellee's petition specifically alleged that only after he executed the acknowledgment of paternity did he learn that appellant had engaged in sexual relations with other parties who could have fathered the child and that the child did not physically resemble appellee. Furthermore, even the prior version of the statute, which appellant urges us to apply, allows a legal father to have an absolute right to a paternity test and have his child-support obligation terminated if it is determined that he is not the biological father. *See Martin v. Pierce*, 370 Ark. 53, 60, 257 S.W.3d 82, 88 (2007).

(b) The court shall not set aside, alter, or modify any final decree, order, or judgment of paternity in which paternity blood testing, genetic testing, or other scientific evidence was used to determine the adjudicated father as the biological father.

. . . .

(d)(1) Beyond the sixty-day period or other limitation set forth in subsection (c) of this section, a person may challenge a paternity establishment pursuant to a voluntary acknowledgment of paternity or an order based on an acknowledgment of paternity only upon an allegation of fraud, duress, or material mistake of fact.

(2) The burden of proof shall be upon the person challenging the establishment of paternity.

(e)(1)(A) When any man has been adjudicated to be the father of a child or is deemed to be the father of a child pursuant to an acknowledgment of paternity without the benefit of scientific testing for paternity and as a result was ordered to pay child support, he shall be entitled to one (1) paternity test, pursuant to § 9-10-108, at any time during the period of time that he is required to pay child support upon the filing of a motion challenging the adjudication or acknowledgment of paternity in a court of competent jurisdiction.

(B) If an acknowledgment of paternity was the basis for the order of support, the motion must comply with the requirements of subsection (d) of this section.

(2) The duty to pay child support and other legal obligations shall not be suspended while the motion is pending except for good cause shown, which shall be recited in the court's order.

(f)(1) If the test administered under subdivision (e)(1)(A) of this section excludes the adjudicated father or man deemed to be the father pursuant to an acknowledgment of paternity as the biological father of the child and the court so finds, the court shall:

(A) Set aside the previous finding or establishment of paternity;

(B) Find that there is no future obligation of support;

(C) Order that any unpaid support owed under the previous order is vacated; and

(D) Order that any support previously paid is not subject to refund.

(2) If the name of the adjudicated father or man deemed to be the father pursuant to an acknowledgment of paternity appears on the birth certificate of the child, the court shall issue an order requiring the birth certificate to be amended to delete the name of the father.

(g) If the test administered under subdivision (e)(1)(A) of this section confirms that the adjudicated father or man deemed to be the father pursuant to an acknowledgment of paternity is the biological father of the child, the court shall enter an order adjudicating paternity and setting child support in accordance with § 9-10-109, the guidelines for child support, and the family support chart.

Ark. Code Ann. § 9-10-115.

The paternity test determined that appellee was not the father. Pursuant to that test result, the trial court entered an order in compliance with section 9-10-115. Appellant argues that the trial court should have applied Arkansas Code Annotated § 9-10-115 (Supp. 2005) instead of the amended version that was in effect at the time the trial court entered its order filed for record on October 17, 2007. Appellant insists that because the petition for paternity testing was filed prior to the effective date of July 31, 2007, and that the results of the paternity testing were filed of record prior to the effective date of the amendments, that the trial court had no authority to enter an order pursuant to the statutory provisions in effect at the time the order was entered. She urges us to apply the previous provision that allowed for only a prospective termination of support.

Her argument is unpersuasive. As Justice Brown explained:

There is continued confusion over the issue of child-support arrearages under § 9-10-115(f)(1) among the bench and bar, as evidenced by the case at hand. I urge the General Assembly, which is now in session, to clarify § 9-10-115(f)(1) once and for all on whether child-support arrearages must be paid by a non-biological father in all instances.

*Office of Child Support Enforcement v. Parker*, 368 Ark. 393, 400, 246 S.W.3d 851, 856 (2007) (Brown, J., concurring).

Our legislature was in session when *Parker* was published and our legislature amended the statute at issue here to clearly state its intention that a nonbiological father be relieved of

all child-support arrearages as well as all future child support. The trial court applied the statute in effect at the time the written order was filed. Accordingly, we find no error and affirm.

HART, BIRD, and HEFFLEY, JJ., agree.

PITTMAN, C.J., concurs.

HUNT, J., dissents.

JOHN MAUZY PITTMAN, Chief Judge, concurring. Because the court declined to certify this case to the Arkansas Supreme Court, and I must therefore consider the merits of the arguments presented therein, I concur with the result stated in the majority opinion. I write separately to voice my opposition to this court's continued reluctance to certify significant cases such as this to the Arkansas Supreme Court. We are forced to choose between two potentially unjust results, and to do so we must determine the intent of the General Assembly on a matter that is less than clear. Furthermore, the issues decided herein will potentially affect many Arkansans, including a disproportionately large number of children. To my mind, this case requires construction of Arkansas statutes on an issue of significant public interest, both of which are expressly listed as grounds for certification in Ark. Sup. Ct. R. 1-2(b).

Refusing to certify cases such as this is simply a waste of resources. As often as not, after multiple panels of this court spend several weeks wrangling over the important issues that a case presents, our effort is rendered meaningless when the Arkansas Supreme Court subsequently accepts review of our decision. *See, e.g., Barnett v. Monumental General Insurance Co.*, 81 Ark. App. 23, 97 S.W.3d 901 (2003), *aff'd*, 354 Ark. 692, 128 S.W.3d 803 (2003). This waste could often be avoided by the simple expedient of certification, which is in reality nothing more than asking the Supreme Court if it would like to decide the appeal in the first instance. To do so, it seems to me, is simply a matter of courtesy.

Furthermore, questions of such weight require a definitive and clear opinion. As I noted in my concurrence in *Barnett v. Monumental General Insurance Co., supra,* even judges of our own court often regard our decisions in such cases to be of dubious precedential value. When issues of significant public interest are involved, the bench, bar, and public deserve an analysis that is authoritative and clear.

I respectfully concur.

Eugene Hunt, Judge, dissenting. I disagree with the majority's opinion. The opinion ignores the fact that Carlos Hall was not present and did not testify at the hearing wherein paternity testing was ordered. Carlos Hall filed his petition for paternity testing on December 27, 2006. In paragraph three of that petition, Hall stated: "That the Plaintiff and Defendant engaged in a relationship which led to the live birth of one (1) child, namely, Carlos Deshaun Hall, whose date of birth is November 16, 2002." In paragraph six of the same petition, Hall stated: "That the Plaintiff prays for an order for paternity testing to determine if he is the biological father of the minor child, Carlos Deshaun Hall." A hearing was held on May 3, 2007, and the parties were ordered to undergo paternity testing. Based on the abstract of the record, Carlos Hall was not present at this hearing.

Arkansas Code Annotated section 9-10-115(d), provides, inter alia, that:

> (1) Beyond the sixty-day period or other limitation set forth in subsection (c) of this section, a person may challenge a paternity establishment pursuant to a voluntary acknowledgment of paternity or an order based on an acknowledgment of paternity only upon an allegation of fraud, duress, or material mistake of fact.
>
> (2) The burden of proof shall be upon the person challenging the establishment of paternity.

Based on the plain language of the statute, the burden of proof was on Carlos Hall to prove that he was entitled to a paternity test. Hall was only required to testify that he initially believed that he was the father of the minor child but later decided his belief was erroneous. He did not do that. The trial court ordered the parties to submit to paternity testing although Carlos Hall was not present to offer any testimony in support of his petition that also contained a declaration that Carlos Hall was the father of Carlos Deshaun Hall. Carlos Hall was not entitled to a paternity test because he failed to meet the threshold requirement set forth in section 9-10-115(d)(2). The trial court committed error by ordering the paternity test. I respectfully dissent.